STATE, Respondent, v. SONNENSCHEIN, Appellant.

(159 N. W. 101.)

(File No. 3869.   Opinion filed September 9, 1916.)

1. **Criminal Law—Larceny—Sufficiency of Evidence—Testimony of Accomplice—Corroboration—Defendant's Possession of Stolen Cattle—Evidence to Connect.**

   In a prosecution for larceny of cattle, where an accomplice was the only witness who testified to having seen defendant in possession or control of the stolen cattle, but there was testimony of other and disinterested witnesses so thoroughly corroborative of the accomplice's testimony that it is doubtful if there is not sufficient evidence in the record to sustain the conviction without using the accomplice's testimony, held, that, under Code Crim. Proc., Sec. 364, there was sufficient evidence to sustain the verdict of conviction by such corroboration of an accomplice as tends to connect defendant with commission of the crime.

2. **Same—Evidence of Ownership—Statutory Brand, Oral Evidence of Unrecorded Brand, Competency—Statute.**

   In a prosecution for larceny of cattle described in the information as bearing a certain brand, where the purported owner, a witness for the state, was asked if he knew certain cattle bearing said brand, and, upon his answering in the affirmative, he was asked whose cattle they were, the question being objected to because there was no evidence that the brand had been recorded, held, under Pol. Code, Sec. 2949, providing that, in such actions, the brand on an animal is prima facie evidence of ownership of the brand, provided that the brand has been duly recorded, such statute does not prohibit admission of parol evidence of an unrecorded brand, or one not proven to be recorded.

3. **Criminal Law—Evidence of Accomplice—Conspiracy to Steal Cattle—Previous Conversation Concerning, Competency—Whether Relating to Other Cattle—Intent.**

   In a prosecution for larceny of cattle, testimony of an accomplice as to a conversation, had prior to commission of the offense and during formation of the plan to engage in the guilty enterprise, to the effect that the cattle under discussion during the conversation bore a certain brand, that they started after those cattle, but that when they reached the vicinity where they expected to find them they learned from a confederate who there joined them that said cattle were not on their accustomed range, and that it was then decided to take the cattle described in the information, together with certain other cattle in the vicinity, was admissible over the objection that the conversation related to larceny of other cattle differently

branded; since it related to and constituted part of the same transaction alleged, and tended directly to establish guilty intent of defendant.

4. **Larceny of Cattle—Evidence—Hearsay—Contents of Letter Concerning Sale of Cattle, Pursuant to Conspiracy—Defendant's Knowledge of Contents.**

Testimony of contents of a letter, given by defendant's accomplice, in a prosecution for larceny of cattle, which letter related to making sale of cattle they expected to steal, and was written in defendant's presence, and pursuant to the same general enterprise, that defendant knew its contents and acquiesced in what it said, was binding upon him, and was not hearsay: -

5. **Same—Evidence—Acts Pursuant to Conspiracy, Whether Binding on Defendant—Conclusion of Witness—Hearsay.**

Testimony of an accomplice, in a prosecution for larceny of cattle, that while he and defendant were with the stolen cattle on their way to shipment they saw two men on horseback riding toward them, that thereupon they drove the cattle into a draw and then rode out on high ground away from the cattle, where they stopped and dismounted, and that, though nothing was said by either of them, witness knew they did so because they did not want any one to ride up on them while they had the cattle, was admissible against defendant, and did not call for witness' conclusion; that it related to necessary acts in carrying out the conspiracy, and to the motive for their conduct at the time and place. **Held**, further, that such testimony was not hearsay; and that the question to witness as to why they had ridden away from the cattle called for a statement of fact within his knowledge.

6. **Criminal Law—Evidence—Larceny of Cattle—Conspiracy—Joint Enterprise—Motive—Acts Mutually Binding.**

Where a conspiracy is shown to exist, each conspirator is bound by the acts of the other in carrying it out; the enterprise is joint; all are actuated by the same motive, and each is responsible for the acts of the other.

7. **Same—Owner's Search for Cattle, Materiality of Evidence Concerning—Prejudice.** •

Testimony of an accomplice, in a prosecution for larceny of cattle, concerning his knowledge that search was being made for the cattle about the time when defendant and witness were loading the cattle into cars, while its materiality is not apparent, yet, **held**, to be without prejudice to defendant.

8. **Same—Evidence—Telegram to Accomplice re Shipment of Cattle—Error Cured by Original Telegram—Prejudice.**

Testimony by an accomplice, in a prosecution for larceny of cattle, concerning contents of a telegram sent witness by de-

fendant, in connection with shipment of the cattle, if erroneously admitted, was cured by subsequent admission in evidence of the original telegram.

9. **Criminal Law—Trials—Misconduct of State's Counsel—Demand for Witness' Letter to Third Person, Impropriety of—Prejudice, Cured by Court's Admonition to Jury.**

The conduct of state's counsel, in a prosecution for larceny of cattle, in demanding of defendant during the trial and in presence of the jury a certain letter claimed to have been written or dictated by an accomplice, a witness, and addressed to a man in St. Paul, Minn., there being at the time no evidence tending to show that such a letter was then, or ever had been, in possession of defendant or his counsel, was highly improper; but was without prejudice to defendant, since the trial court at the time and on its own motion told the jury there was no presumption that defendant or his counsel had ever had the letter, that it was not addressed to any of them, and that it did not appear that defendant had ever had charge of it, and admonished the jury to disregard the remarks of counsel concerning it.

10. **Same—Conduct of Trial Judge—Fining Intoxicated Witness for Defendant—Discretion—Review.**

Because of the great significance attached to remarks or acts of the trial judge by the jury, especially on a criminal trial, he should exercise utmost caution to avoid saying or doing anything calculated to disparage defendant, or to unfavorably impress the jury; but the method of keeping order in the courtroom and maintaining the court's dignity is left largely to the discretion of the presiding judge, which, in absence of abuse thereof, is not reviewable on appeal. So held, where trial judge fined a witness for defendant who was intoxicated.

11. **Criminal Law—Harmless Error—Conduct of Trial Judge—Committing Defendant's Intoxicated Witness.**

In a criminal prosecution, a witness subpoenaed by defendant, took the witness stand while under influence of intoxicants, was fined for contempt by trial judge and committed to custody of sheriff; there being no intimation that defendant or his counsel was in any wise responsible for witness' condition. Held, that no prejudice appears as a result of the court's action; the testimony of witness of record indicating that he testified in a coherent and intelligent manner, and that defendant had the full benefit of his testimony.

12. **Criminal Law—Instructions—Charging that a Fact Had Been Proven—Trial on That Theory, Effect of Instruction.**

Where, in a prosecution for larceny, the case was tried by defendant as well as the state on the theory that the cattle had been stolen, and stolen from a certain person, held, that,

while it is incumbent upon the state, in a criminal prosecution, to prove defendant's guilt beyond reasonable doubt, this does not bar the defense from admitting a material fact, nor the court from assuming the existence of one admitted by defendant; and an instruction that "it is not disputed that the property was stolen from * * * . The real question at issue for you to determine is whether the defendant * * * took," etc., the property, was not prejudicial error; since it is not error to give an instruction in a criminal case assuming the existence of facts proven by undisputed evidence.

13. **Same—Instruction Singling Out Defendant's Testimony—Error, Curing of, By Further Instruction.**

Where, in a criminal prosecution, trial court instructed that the fact alone that defendant is the defendant is not evidence sufficient to impeach or discredit his testimony, but that in determining its weight and credit the jury may take into consideration his interest, etc., that he is the defendant on trial, testifying in his own behalf, and that what weight and credit ought to be given to his testimony is matter for their consideration, held, that, while the instruction called special attention of jury to defendant's testimony, yet, in view of the court's having, in the same instruction, cautioned the jury that "the fact alone that he is the defendant is not evidence sufficient to impeach or disregard his testimony," any error there might otherwise have been in the instruction was cured thereby.

14. **Criminal Law—Trials—Defendant's Immunity from Testifying— Immunity From Comment—Rule, When He Takes Witness Stand—Jury's Right.**

A defendant in a criminal case cannot be required, against his will, to go upon the witness stand and testify; and, if he does not do so, his failure cannot be subject of comment by either the prosecuting attorney or the presiding judge, and any violation of this rule is invariably ground for reversal.    On the other hand, if the defendant, in exercise of his constitutional rights, does go upon the witness stand, then he subjects himself and his testimony to the same rules that apply to other witnesses and their testimony; his interest, conduct, and demeanor on the witness stand are subjects for consideration of jury, but the credibility of his testimony is to be tested by the same rules that apply to testimony of others.

15. **Same—Instruction—Reasonable Doubt—Burden to Furnish Juror Reason, Imposed by Instruction—Instruction Approved.**

In giving instructions to the jury in a criminal case, trial court charged, among other things, on question or reasonable doubt, that a reasonable doubt is a doubt of guilt reasonably arising from all the evidence, or the lack of evidence in the case, and that "it must be such a doubt as the juror is able

to give a reason for." Held, that the instruction was proper against the objection that it placed upon defendant the burden to furnish to each juror a reason, and that a juror may have a reasonable doubt, although unable to give a reason therefor; and the instruction is approved; following State v. Fullerton Lumber Co., 35 S. D. 410, 152 N. W. 708.

**16.** Criminal Law—Evidence—Presumption of Innocence—Instruction, as to Limit of Presumption—Rule of Law, Stated—Indefiniteness, Cured by Further Instruction.

The presumption of innocence with which a defendant in a criminal trial is clothed by law accompanies him throughout every stage of the trial; and held, that while an instruction that presumption of innocence only continues with defendant until the contrary is proved beyond all reasonable doubt, and that, if jury believed at that stage of the trial that defendant was guilty as charged, the presumption had been overcome, and they should find him guilty, was too indefinite in respect to the duration of the presumption, yet, the court having further instructed that defendant was presumed to be innocent until proven guilty beyond reasonable doubt, that every presumption was in favor of his innocence, that he was not required to prove his innocence or offer any evidence as to it, and that the presumption followed him throughout the trial of the case until the evidence convinced the jury to the contrary beyond reasonable doubt, such indefiniteness was thereby cured.

**17.** Criminal Law—Trials—Instructions—Construing All Parts Together—Rule of Construction.

In considering the correctness of instructions to the jury, the entire instruction must be considered together, and the various portions thereof considered with reference to the other portions.

**18.** Criminal Law—Larceny—Trials—Instructions, Question of Larceny, and Ownership, Elimination of From Jury—Stating Elements of Larceny, Sufficiency.

An instruction that, if the jury found that defendant, either alone or with some other person, took and carried away the cattle, then he will be guilty of the crime of grand larceny as charged, held, not objectionable as eliminating from jury consideration of question of larceny and ownership of the property, where such instruction was immediately preceded by a definition of larceny generally, of grand larceny as applied to the case, followed by an explanation of three elements of grand larceny: First, that it be stolen property; second, that it be property of another; third, that it be accompanied by fraud and stealth.

The defendant, Herman Sonnenschien, was convicted of

the larceny of cattle; and from the judgment of conviction, **and** from an order denying a new trial, he appeals. Affirmed.

*A. K. Gardner, Philip & Waggoner,* and *Gaffy & Stephens,* for Appellant.

*Clarence C. Caldwell,* Attorney General, *Byron S. Payne,* Assistant Attorney General, and *F. W. Lambert,* State's Attorney, (*Glenn W. Martens* of counsel), for the State.

(1) To point one of the opinion, Appellant cited: Code of Civil Procedure, Sec. 364; State v. Pratt, 21 S. D. 305; Sykes v. U. S., 204 Fed. 909; State v. Duncan, (Ia.) 138 N. W. 913; State v. Erickson, (S. D.) 146 N. W. 1071; Rogers v. State, (Ark.) 141 S. W. 491; Wharton's Criminal Evidence, (10th Ed.) Sec. 442; 12 Cyc. 456.

(2) To point two of the opinion, Appellant cited: Political Code, Sec. 2940; Murray v. Bank, (Col.) 38 Pac. 615; Childer v. State, (Tex.) 35 S. W. 654; State v. Dunn, (Idaho) 88 Pac. 235.

(3) To point three of the opinion, Appellant cited: Wharton's Criminal Evidence, Sec. 32; Wigmore on Evidence, Sec. 302; State v. Fulwider, (S. D.) 134 N. W. 807; Commonwealth v. Shepard, 1 Allen (Mass.) 575.

Respondent cited: Jones on Evidence, 2nd Ed., Sec. 138; Stevens v. State, 26 S. W. 728; Baker v. State, 50 N. W. 518.

(4) To point four of the opinion, Respondent cited: State v. Cherrington, 34 S. D. 562.

(9) To point nine of the opinion, Appellant cited: Sec. 9, Article 6, State Constitution; Boyd v. U. S. 116 U. S. 616; Ex Parte Wilson, (Tex.) 47 S. W. 996; Code Crim. Proc. Sec. 361; State v. Kaufman, 22 S. D. 433; State v. Bennett, 21 S. D. 396.

(10) To point ten of the opinion, Appellant cited: 21 Pl. & Pr. 994-1000; People v. Abbott, (Cal.) 34 Pac. 500; Wilson v. Territory, (Okla.) 60 Pac. 112; McMahan v. State, (Tex.) 135 S. W. 558.

Respondent cited: State v. Hogg, 29 L. R. A. (N. S.) 830; 21 Enc. Pl. and Pr. 996; State v. Brown, 100 Iowa, 50, 69 N. W. 277.

(11) To point eleven of the opinion, Respondent cited: Lindsay v. Peo., 67 Barb. (N. Y.) 548; 21 Enc. Pl. and Pr. 998.

(12) To point twelve of the opinion, Appellant cited: State

**v.** Momberg, (N. D.) 103 N. W. 566; State v. Barry, (N. D.) 92 N. W. 817; State v. Bige, (Ia.) 84 N. W. 518.

Respondent cited: State v. Shepard, 30 S. D. 219, 138 N. W. 294; State v. Madison, 23 S. D. 584, 122 N. W. 647; State v. Kinney, 21 S. D. 390, 113 N. W. 77.

(13)  To point thirteen of the opinion. Appellant cited: People v. Maughs, (Cal.) 86 Pac. 191; People v. Borrego, 95 Pac. 381.

Respondent cited: State v. Pock, 35 S. D. 393, 152 N. W. 507.

(14)  To point fourteen of the opinion, Respondent cited: State v. Kent, 5 N. D. 516, 67 N. W. 1052, 35 L. R. A. 518.

(15)  To point fifteen of the opinion, Appellant cited: Abbott v. Territory, (Okla.) 94 Pac. 179; Owen v .U. S., 130 Fed. 279.

Respondent cited: State v. Raice, 24 S. D. 111, 123 N. W. 708; State v. Fullerton Lmbr. Co. 35 S. D. 410, 152 N. W. 708; State v. Serenson, 7 S. D. 277, 64 N. W. 130; Butler v. State, 102 Wis. 368, 78 N. W. 590; State v. Bjelkstrom, 20 S. D. 1, 104 N. W. 481; State v. Denny, 17 N. D. 519, 117 So. 869; People v. Shaughnessy, 110 Cal. 598.

(16) To point sixteen of the opinion, Appellant cited: Coffin v. U. S., 156 U. S. 432; People v. O'Brien, (Cal.) 39 Pac. 325; People v. McNamara, (Cal.)· 29 Pac. 955.

Respondent cited: People v. James, 5 Cal. App. 427; People v. Davenport, 13 Cal. App. 632; Holt v. U. S., 218 U. S. 245, 31 Sup. Ct. 2, 20 Ann. Cas. 1138.

(17)  To point seventeen of the opinion, Respondent cited: State v. Devers, 32 S. D. 473, 143 N. W. 364; Dupree v. Collins, 33 S. D. 365;· People v. Tomlinson, 102 Cal. 19, 36 Pac. 506; Philamalee v. State, 58 Neb. 320, 78, 25 Cyc. 146, Note 17, 20; Flohr v. Territory, 14 Okla. 477, 78 Pac. 565; 25 Cyc. 144, Note 19.·

(18)  To point eighteen of the opinion, Appellant cited: Hicks v. People, (Ill.) 41 N. E. 862.

POLLEY, P. J.  [1]  Appellant was convicted of the larceny of certain cattle in Stanley county, and brings the case to this court upon an appeal from the judgment of conviction and from an order overruling his motion for a new trial.  The chief con-

tention made by the appellant is that the verdict rests upon the uncorroborated testimony of an accomplice. At the trial one Ed Carr was a witness for the state. He testified that at about the time mentioned in the information he, in company with defendant and another, gathered the cattle that were the subject of the larceny from their accustomed range in Stanley county, and drove them in a northerly direction across the Cheyenne river to the town of Lantry, on the Milwaukee Railroad, where they were loaded on cars to be shipped to market. Carr narrated all the details of the transaction from the time of the formation of the plan to steal said cattle until they were shipped from Lantry; and, if his testimony is true, it is sufficient to warrant defendant's conviction. But, being an accomplice of the defendant, as he confessed himself to be, a conviction cannot be had unless his testimony is corroborated by such other evidence as tends to connect defendant with the commission of the offense. Section 364, Code Cr. Proc. We believe the record discloses such corroborating evidence. No witness other than Carr testified to ever having seen defendant in the actual possession of or exercising control of the stolen cattle, but there were a number of witnesses who did testify to seeing him in their immediate vicinity along the route testified to by Carr, between the Cheyenne river and the town of Lantry. He was where he could render aid or give warning if necessary. Employees of the railroad company testified that it was defendant who ordered the cars in which to ship said cattle. Carr testified that they were not able to ship said cattle for several days after they reached Lantry, and that, while they were waiting at Lantry, they pastured the cattle in the vicinity of that place; that he himself remained with the cattle while defendant stayed around Lantry, and at the railroad stations immediately east and west of Lantry. This testimony was fully corroborated by the testimony of a number of disinterested parties. Carr testified that on one occasion defendant brought a lunch out from Lantry for himself and the party who was helping him hold the stock. Other witnesses testified to seeing him take said lunch from Lantry. Carr testified that, while they were at Lantry, he and the defendant spent two nights in a room over a store at that place. The owner of the store testified that the defendant and one or two other parties did stay there at said

time, and defendant himself admitted that he stayed there at said time, but denied that it was Carr who stayed with him. It is not necessary to go into detail in regard to all of the corroborative evidence, but so thoroughly was the testimony of Carr corroborated by other and disinterested witnesses that it is doubtful if there is not sufficient evidence in the record to sustain the conviction of the defendant without using the testimony of Carr at all. True, much of the corroborating testimony was denied by defendant and other witness on his behalf, and some that was not denied, was plausibly explained by defendant, but this did not change the character of the testimony. It still remains corroborating evidence, and its denial by the defendant presented only a question of veracity for the jury; and, if the jury, under proper instructions by the court, believed the evidence for the state, it was sufficient to support the verdict.

[2]   Appellant next contends that there was no competent proof of the ownership of the stolen cattle. The cattle alleged to have been stolen were described in the information as bearing a certain brand. The purported owner of said cattle, while on the stand as a witness for the state, was asked if he knew certain cattle bearing the brand alleged in the information to be on the stolen cattle. Upon answering in the affirmative, he was asked whose cattle they were. This was objected to by defendant on the ground, among others, that there was no evidence to show that the brand in question had ever been recorded. The objection was based on the provisions of section 2940, Pol. Code. This section provides that, in actions of this kind, the brand on any animal is prima facie evidence of the ownership of the brand, "provided that such brand has been duly recorded as provided by law. But, while this section provides that a recorded brand shall be prima facie evidence of ownership, it does not prohibit the admission of parol evidence of an unrecorded brand or one not proven to be recorded. Appellant cites Murray v. Bank, 5 Colo. App. 359, 38 Pac. 615; Childers v. State, 37 Tex. Cr. R. 392, 35 S. W. 655, and State v. Dunn, 13 Idaho, 9, 88 Pac. 235, in support of his objection but those cases were all decided in states having statutes that prohibit the admission in evidence of brands, unless such brands have been recorded, and therefore are not in point

in this case.  We have no such statute in this state, and the witness was properly permitted to answer.

[3]  At the trial the witness Carr was permitted, over defendant's objection, to narrate a certain conversation he claims took place between himself and defendant prior to the larceny set out in the information, but during the formation of the plan to engage in the guilty enterprise.  The objection was based on the ground that the conversation related to the larceny of other cattle and of a different brand than the ones described in the information.  We believe this evidence was properly received. While they may have had different cattle in mind at that particular time, still the conversation related to and constituted a part of the same transaction.  It appears from Carr's testimony that the cattle that were under discussion during the conversation in question were branded open A bar, and that it was the open A bar cattle that they intended to take, and that it was the open A bar cattle they started after when they left defendant's ranch on the day of the larceny; that, when they reached the vicinity where they expected to find the open A bar cattle, they learned from their confederate who joined them at that place that the open A bar cattle were not on their accustomed range at that time, and it was then decided to take the cattle described in the information, together with certain other cattle owned by one W. C. Lewis, which cattle were then in that immediate vicinity.  From this circumstance it appears that it was not so much their plan to steal the particular cattle branded open A bar, as it was to steal a shipment of cattle, regardless of whose cattle they might be, and the conversation in question was a part of the transaction set out in the information and tends directly to establish the guilty intent of the defendant.

[4]  The witness Carr was permitted to testify to the contends of a certain letter relative to making a sale of cattle at some point in Minnesota.  This was objected to by defendant on the ground that it was not binding on him and that it was hearsay. It appeared, however, that if such a letter was ever written, it related to the disposition of cattle they were expecting to steal on the expedition they were then planning, and was written pursuant to the same general enterprise.  It was written in defendant's presence; he knew its contents and acquiesced in what was said.

It was therefore as binding upon him as though he had written it himself, and his objection was properly overruled.

[5, 6] Carr testified that at one time while himself and defendant were with the stolen cattle between the Cheyenne river and Lantry they saw two men on horseback at some distance, riding toward them; that, on seeing said parties, they drove the cattle into a draw, and then rode down the side of the draw and out on the high ground away from the cattle to a distance of about half a mile, where they stopped on a little butte and got off their horses. Nothing was said by either of them as to why they had ridden out there, but witness said he knew why they did it. He was then asked to state why. This was objected to on the ground that it called for a conclusion of the witness and was not binding on the defendant. The witness answered, "We did not want anybody to ride up on us while we had these cattle." This is assigned as error. We believe this answer was binding on the defendant and was properly received in evidence. If the cattle in question were, in fact, stolen, it was done by Carr, defendant, and another, pursuant to a conspiracy entered into by them for that purpose shortly prior to that time. The movements of the witness and defendant relative to which the witness was being interrogated were made by them as necessary acts in carrying out the purposes of said conspiracy. The question called for the motive for their conduct at that particular time and place. This was a proper subject of inquiry, as much so as any other act done in carrying out the said conspiracy, and it is a well-settled rule that, where a conspiracy is shown to exist, each conspirator is bound by the acts of the other in carrying out such conspiracy. The enterprise is joint; all are actuated by the same motive, and each was responsible for the acts of the other. The evidence was not hearsay in any sense of the word. The question called for a statement of fact within the knowledge of the witness, and, under the above rule, the answer was as binding on the defendant as it was on the witness.

[9, 10] The witness was next interrogated as to whether or not he knew, at about the time the cattle were loaded into the cars, search was being made for said cattle. We do not see the materiality of this testimony, but we are unable to see wherein the defendant was in any way prejudiced by the admission of evi-

dence of such fact. Neither was the defendant prejudiced by the admission of the contents of a certain telegram sent by the defendant, addressed to Carr at Montevideo, Minn. If error was committed, it was afterwards cured by the admission in evidence of the identical telegram itself.

[11, 12] Defendant contends that there was certain misconduct of counsel for the state and the trial judge that prevented him from having a fair trial. The conduct of counsel for the state of which complaint is made consists of a demand made by counsel upon defendant during the trial and in the presence of the jury for a certain letter claimed to have been written or dictated by the witness Carr and addressed to a man by the name of Lake, at St. Paul, Minn. Such a demand made on a defendant during a criminal trial is calculated to leave the impression upon the minds of the jury that such a letter or other evidence is in the possession of or under the control of the defendant, and from this the inference would follow, if the demand were not complied with, that the defendant was suppressing material evidence. At the time of the demand there was no fact or circumstance in the record tending to show that such a letter was then, or ever had been, in the possession of the defendant or his counsel and the demand made under such circumstances was highly improper. But in this case we do not believe the defendant was prejudiced, for trial court at that time, and upon its own motion, informed the jury that there was no presumption that the defendant or his counsel had ever had the letter in question; that it was not addressed to any of them, and it did not appear that defendant had ever had charge of it; and the court admonished the jury to disregard the remarks of counsel concerning the same.

[13, 14] During the trial a witness who had been subpoenæd for the defendant appeared in the courtroom and took the witness stand while under the influence of intoxicating liquor. Upon this fact becoming apparent to the trial judge, he adjudged such witness in contempt of court, assessed a fine against him, and committed him to the custody of the sheriff. Defendant excepted to this proceeding on the part of the court, and now contends that he was prejudiced thereby. Because of the great significance attached by the jury to the remarks or acts of the trial court during a trial, and especially a criminal trial, it is necessary

that the trial judge exercise the utmost caution to avoid saying or doing anything calculated to disparage the defendant or to unfavorably impress the jury. On the other hand, it is incumbent upon the trial judge to keep order in the courtroom and to maintain the dignity of the court. The method of doing this is left largely to the discretion of the presiding judge, and, in the absence of abuse of this discretion, it will not be reviewed by this court. It was not intimated that the defendant or his counsel was in any wise responsible for the condition of the delinquent witness, nor are we able to see how the defendant was prejudiced by the occurrence. The testimony of the witness set out in the record indicates that he testified in a coherent and intelligent manner, and that the defendant had the full benefit of his testimony. This being the case, we are unable to see how the punishment of such witness could in any manner disparage the defendant.

[15-17] Appellant contends there is error in the instructions of the court. The first instruction complained of is as follows:

"In this case it is not disputed that the property was stolen from Gus Seaman. The real question at issue for you to determine is whether the defendant Herman Sonnenschein took, or assisted in taking, the property."

This was excepted to on the ground:

That it "was incumbent upon the state to prove every material charge in the information, beyond all reasonable doubt, and that it was error for the court to charge that any question of fact had been proven, all questions of fact being for the jury to determine."

It is true, of course, that it is incumbent upon the state, in a criminal prosecution, to prove the guilt of the defendant beyond all reasonable doubt, but this does not bar the defense from admitting any material fact nor the court from assuming the existence of a fact admitted by the defendant. In this case it was admitted by the defendant that the cattle described in the information were stolen from Gus Seaman. The case was tried by the defendant, as well as the state, upon the theory that the cattle had been stolen from Gus Seaman. The theory of the state was that the cattle were stolen by Ed Carr, the defendant, Sonnenschein, and another, while it was the theory of the defense that

the cattle had been stolen by Carr alone. It appears from the record that counsel for the defendant, in his opening statement to the jury, made the remark that:

"It was not the contention of the defense that these cattle were not stolen. We admit that. But we shall show you that Herman Sonnenschein was in no way connected with the theft."

And again:

"We do not deny these cattle were stolen. Ed Carr stole these cattle, and now he is trying to save himself by swearing it on Sonnenschein."

In view of these admission, the defendant was in no wise prejudiced by the instruction complained of. With these admissions before the jury, they were not called upon to determine whether the cattle were stolen or not; that was a conceded fact. The only question for the jury to determine was whether the defendant was a party to the theft. It has already been held by this court that it is not error to give an instruction in a criminal case assuming the existence of facts that have been proved by undisputed evidence. State v. Shepard, 30 S. D. 219, 138 N. W. 294; State v. Kinney, 21 S. D. 390, 113 N. W. 77.

[18-21] Upon the question of defendant's right to testify in his own behalf, and his testimony given in the exercise of such right, the trial court instructed the jury as follows:

"Under the law the defendant in a criminal case is permitted to go upon the witness stand, and testify in his own behalf, and the fact alone that he is the defendant is not evidence sufficient to impeach or discredit his testimony, but in arriving at your verdict and in determining what weight and credit you will give to his testimony you have the right to take into consideration his interest in the result of this suit, and that he is the defendant on trial, testifying in his own behalf. In other words, the interest of the defendant in the result of this trial is a matter to be taken into consideration by the jury—what weight and credit ought to be given to his testimony."

Defendant excepted to this instruction for—

"the reason that it especially pointed out and commented upon the testimony of the defendant and distinguished such testimony from the testimony of other witnesses and announced a different rule applicable thereto."

It is the contention of defendant that by this instruction the trial court singled out the testimony of the defendant and subjected it to a different rule from that applied to the testimony of other witnesses. A defendant in a criminal case cannot be required, against his will, to go upon the witness stand and testify; and, if he does not take the stand, his failure to do so cannot be the subject of comment by either the prosecuting attorney or the presiding judge, and any violation of this rule is invariably held to be ground for a reversal. On the other hand, if the defendant, in the exercise of his constitutional rights, does go upon the witness stand, then he subjects himself and his testimony to the same rules that apply to other witnesses and their testimony. His interest and his conduct and demeanor on the witness stand are subjects for the consideration of the jury, but the credibility of his testimony is to be tested by the same rules that apply to the testimony of other witnesses. In this case the instruction complained of called special attention of the jury to the testimony of the defendant, but we cannot see wherein the defendant was prejudiced, because in the same instruction the court cautioned the jury as follows:

"The fact alone that he is the defendant is not evidence sufficient to impeach or disregard his testimony."

This cured any error there might otherwise have been in the instruction.

[22] Upon the question of reasonable doubt the court charged the jury as follows:

"The term 'reasonable doubt' is pretty well understood, but not easily defined. It is no mere possibility of a doubt, not an imaginary doubt, not a doubt of the absolute certainty of the guilt of the defendant, because everything relating to human affairs and depending upon moral evidence is open to some conjectural or imaginary doubt, and because absolute certainty is not required by the law. It is not such a doubt as one might conjure or hatch up in order to acquit a friend without any reason therefor, but it must be a substantial doubt, and one which would ordinarily impress the judgment of a prudent man in the graver and more important affairs of human life. A reasonable doubt which entitles a defendant in a criminal case to an acquittal is a doubt of guilt reasonably arising from all the evidence in the case, or it may

arise from lack of evidence in the case, and it must be such a doubt as the juror is able to give a reason for."

Defendant excepts to this instruction for the reason that it places upon the defendant the burden to furnish to each juror a reason, and that a juror may have a reasonable doubt, although unable to give a reason therefor. This instruction is, in substance, the same as an instruction that was approved by this court in State v. Fullerton Lumber Co. et al., 35 S. D. 410, 152 N. W. 708. We do not believe this instruction is subject to the criticism made by defendant or that the defendant was prejudiced thereby.

[23-26] The court instructed the jury in regard to the presumption of innocence as follows:

"The court further instructs the jury that the presumption of innocence with which the defendant is clothed by law at the outset of a criminal trial only continues with the defendant until the contrary is proven beyond all reasonable doubt, and in this case if the jury believe from the evidence beyond all reasonable doubt at this stage of the trial that the defendant is guilty as charged in the information, then the presumption of innocence with which the law clothed the defendant at the commencement of this trial has been overcome, and it will then be your duty, as jurors in this case, to find the defendant guilty."

This instruction was excepted to on the ground that it, in effect, advised the jury that the presumption of innocence was limited, and that it did not continue with the defendant throughout the entire trial. While this instruction, taken alone, might tend to mislead or confuse the jury upon the question of the presumption of innocence, we do not believe it has that effect when taken in connection with the entire instruction of the court. In addition to the above-quoted instruction, the court instructed the jury upon the presumption of the defendant's innocence as follows:

"The rule of law in a criminal case is that the defendant is presumed to be innocent until he is proven guilty beyond a reasonable doubt. The court instructs you in this case that the law raises no presumption against the defendant, but every presumption is in favor of his innocence. He is not required to prove himself innocent or put in any evidence at all upon that subject, and this presumption of innocence abides with him and follows

him throughout the trial of the case until the evidence convinces you to the contrary beyond all reasonable doubt. In order to convict the defendant of the charge contained in the information, every material fact necessary to constitute such offense must be proved beyond all reasonable doubt, and if the jury or any member of the jury entertain any reasonable doubt upon any single fact or element necessary to constitute such criminal offense, as heretofore defined, then it would be your duty to give the defendant the benefit of such doubt and acquit him."

The only criticism to which this instruction is subject is that it is indefinite as to the duration of the presumption. But in considering the correctness of instructions to the jury, the entire instruction must be considered together, and the various portions thereof considered with reference to the other portions. It is true that the presumption of innocence with which a defendant in a criminal trial is clothed by the law accompanies him throughout every stage of the trial, but when the entire instruction is taken together, we do not believe the jury was given to understand or could reasonably infer the presumption of innocence existing in favor of the defendant was to be regarded as overcome by the evidence until the case was finally submitted to them, or that the rights of the defendant were prejudiced thereby. It is not out of place, however, at this time to say that, in all criminal trials, the trial court should make clear to the jury the importance to the defendant of the presumption of innocence existing in his favor, and also to make it clear to them that this presumption accompanies the defendant throughout every stage of the trial, and should be taken into consideration by them, along with the evidence in the case, in arriving at their conclusion as to the guilt or innocence of the defendant.

[27] The defendant excepted to the giving of the following instruction:

"If you find from the evidence, beyond a reasonable doubt, as the court will hereinafter instruct you, that the defendant Herman Sonnenschein, either alone or with some other person, took and carried away this property, that is, this stock or any part thereof, then he will be guilty of the crime of grand larceny as charged in the information."

This is excepted to for the reason, as claimed by defendant,

that it eliminated from the jury any consideration of the question of larceny and ownership of the property. This exception is not well taken. The said instruction is immediately preceded by a definition of larceny generally, and of grand larceny as applied to this case. The court then further explained as follows:

"There are three elements of grand larceny; First, that the property be stolen; second, that it be the property of another person; third, that it be accompanied by fraud and stealth."

The question of ownership has already been considered.

This disposes of the case, and finding no prejudicial error in the record, the judgment and order appealed from are affirmed.