STATE, Respondent v. WATKINS, Appellant

(187 N.W.2d 265)

(File No. 10849. Opinion filed May 21, 1971)

**Gene Paul Kean,** Sioux Falls, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **C. J. Kelly,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

WOLLMAN, Judge.

This is an appeal by the defendant, Charles Wesley Watkins, from his conviction on a charge of grand larceny by a Minnehaha County jury on May 21, 1970. He contends that he was denied the effective assistance of counsel and that the trial court erred in giving a certain instruction to the jury.

Defendant was released from the South Dakota State Penitentiary at 9 o'clock a. m. February 25 ,1970, after completing a sentence on a charge of robbery. After visiting his mother's home, defendant started drinking sometime during the course of the day, apparently to celebrate his release from the penitentiary. He returned to his mother's home at about 8:30 or 9:00 o'clock on the evening of February 25th, where he played cards with two of his brothers and several friends until approximately 1:00 a. m. on February 26, 1970, at which time defendant and one of his friends left his mother's house and started walking to a friend's house. After walking one or two blocks, defendant got into a 1964 Chevrolet automobile owned by one John Stenslokken. Defendant admitted that prior to getting into the Stenslokken automobile he had tried one or two other automobiles which were locked. Although the keys had been removed from the Stenslokken car, the ignition switch was not working properly and consequently defendant was able to start the car and drive away from the curb. Mr. Stenslokken heard the spinning of tires on the ice directly in front of his house and recognized the sound of his car as it departed. He looked outside, observed that his car was gone and called the Sioux Falls police within thirty seconds with the report of the apparent theft of his automobile. Defendant was soon observed driving the Stenslokken car by a Sioux Falls police officer who tried to halt defendant by using the red light and siren on the police car. Defendant tried to evade the pursuing police car and was ap-

prehended only after he lost control of the Stenslokken car in a high speed turn and crashed into a utility pole.

Defendant was charged with grand larceny in Municipal Court in Sioux Falls in the afternoon of February 26, 1970, at which time he asked for a court-appointed attorney. An attorney was appointed to represent defendant on March 2, 1970, and defendant was bound over to circuit court for trial after a preliminary hearing on March 5, 1970.

Defendant was ordered examined by a psychiatrist and physician at the Yankton State Hospital upon his petition and upon oral motion of his attorney.

Although the record is not entirely clear upon this point, it appears that sometime prior to May 15, 1970, defendant appeared before Honorable Francis G. Dunn, one of the judges of the circuit court, and asked for a change of attorneys, which request was granted. Sometime prior to May 15, 1970, Mr. C. L. Anderson, an experienced member of the Minnehaha County Bar, was appointed by the court to represent the defendant. On May 15, 1970, defendant appeared for arraignment with his attorney before Judge Dunn, at which time the defendant stated that he wanted to ask the court for a new attorney. Judge Dunn informed the defendant that he was not going to get another attorney and that he had the choice of either using Mr. Anderson or else representing himself.

There then occurred this colloquy between Judge Dunn and Mr. Anderson:

"MR. ANDERSON: Judge, I am—.

THE COURT: We will be in recess for a few moments.

MR. ANDERSON: I don't know what is going on. I talked to him.

THE COURT: Well I know what is going on and we aren't going to have any more of it.

MR. ANDERSON: I talked to him at great length about this. And he told me what kind of a plea

to bargain for and I got that and if this isn't satisfactory, Your Honor, I don't know how I can represent him.

THE COURT: Well, you will have to represent him. We'll just have to go to trial. Do you want to discuss this with him for a few moments?

MR. ANDERSON: All right.

THE COURT: Very well.

(Whereupon a short recess was taken.)

THE COURT: As I understand it, Mr. Anderson, you have discussed this with him and you will try this matter?

MR. ANDERSON: Yes, Your Honor. The case goes to trial, I will do the best I can to defend this man.

THE COURT: Very well.

MR. ANDERSON: To protect his rights and secure his day in Court.

THE COURT: Very well, you may proceed with the arraignment."

The defendant entered a plea of not guilty whereupon Judge Dunn set the case for trial at 9:30 a. m. May 21, 1970. No request for a continuance or a delay was made by Mr. Anderson and the case was duly tried on May 21st.

■ Defendant strenuously argues that because Mr. Anderson was not appointed until five days before trial he did not have adequate time to prepare a defense of the case and thus defendant was denied the effective assistance of counsel.

To support his argument that the time for preparation was too short, defendant stresses the fact that only two witnesses were called on his behalf, his mother and a friend who met him after his release from the state penitentiary, even though there were other persons who were involved with the defendant prior to the offense. Further, the defendant's

portion of the case is limited to seven pages of testimony, three of which consisted of the defendant's own testimony. Also, the report of the examination at the Yankton State Hospital does not appear any place in the record; therefore, we are told, defendant's attorney undoubtedly did not know of it and could not utilize the information in the report. Finally, Mr. Anderson's statement at the time of arraignment that he did not know what was going on and that he did not know how he could represent defendant indicates his unpreparedness to go to trial and his failure to give full energy to the defense of the accused.

This state has long recognized the right of an accused in a criminal action to the assistance of counsel. South Dakota Constitution, Art. VI, § 7, SDCL 23-2-1 and 23-35-11. Moreover, this constitutional and statutory guarantee has been interpreted to mean adequate and effective assistance of counsel and not merely casual and perfunctory representation. State ex rel. Parker v. Jameson, 75 S.D. 196, 61 N.W. 2d 832; State ex rel. Burns v. Erickson, 80 S.D. 639, 129 N. W.2d 712, and State v. Goode, 84 S.D. 369, 171 N.W.2d 733.

It is understandable that disappointed defendants frequently allege that they were denied the effective assistance of counsel. However,

> " 'Effective' does not mean successful. It means conscientious, meaningful representation wherein the accused is advised of his rights and honest, learned and able counsel is given a reasonable opportunity to perform the task assigned to him. * * * Only in extreme cases where it is shown the trial as a whole was a farce and a mockery of justice will a conviction be set aside because of inadequacy of counsel." Scalf v. Bennett, 1967, 260 Iowa 393, 147 N.W.2d 860, 864.

See also State v. Brech, 1969, 84 S.D. 177, 169 N.W.2d 242; Cardarella v. United States, 1967, 8 Cir., 375 F.2d 222; Lupo v. United States, 1970, 8 Cir., 435 F.2d 519; Embry v. State, 1970, 46 Wis.2d 151, 174 N.W.2d 521; Smith v. Woodley, 1969, N.D., 164 N.W.2d 594.

Defendant cites the cases of Martin v. Commonwealth of Virginia, 1966, 4 Cir., 365 F.2d 549, and Twiford v. Peyton, 1967, 4 Cir., 372 F.2d 670, in support of his contention that the time between the appointment of Mr. Anderson and the date of trial was so short as to deny defendant the effective assistance of counsel.

In the Martin case the defendant's indictment was handed up by the grand jury between 11 and 11:30 in the morning, an attorney was appointed immediately and the defendant's case was called for trial that same afternoon less than four hours after the indictment, at which time defendant's attorney entered a guilty plea on defendant's behalf on charges of escape and grand larceny.

In the Twiford case the defendant was arrested on February 12, 1954 and tried on April 30, 1954. Counsel was not appointed until April 29, 1954, some 76 days after defendant's arrest. Defense counsel interviewed his client in the afternoon of April 29th, at which time defendant told his attorney that he was ready to go to trial the following morning. When the case was called for trial the following morning defendant told his attorney to request a continuance so that a certain woman could be called to testify on defendant's behalf. A motion for continuance was denied. It appears that at the time the Martin and Twiford cases were tried it was the procedure in the courts of Virginia to indict and try defendants on the same day, a practice which has since been abandoned. See Martin v. Commonwealth of Virginia, supra, 365 F.2d at p. 554.

While lack of time to prepare a defense can result in the denial of effective assistance of counsel, we do not believe that was the situation in the instant case. It should be emphasized that although the record does not clearly show the date on which Mr. Anderson was appointed to represent defendant, it was sometime prior to May 15, 1970. The record conclusively shows that the defendant had talked to Mr. Anderson about his case prior to the arraignment on May 15, 1970.

It is interesting to note that the defendant does not contend that his trial counsel was incompetent. It is a matter

of record that Mr. Anderson has been a practicing attorney in Sioux Falls for many years. It is not the function of this court to second-guess an experienced trial attorney's decisions regarding matters of trial tactics. If we are to indulge in assumptions, as defendant would apparently have us do, we could very well assume that Mr. Anderson made the decision to call but two defense witnesses only after evaluating the possible effects of the testimony of other potential witnesses. The fact that the report from the Yankton Sate Hospital does not appear in the record can just as logically lead to the conclusion that there was nothing in it of any value to the defendant as to the conclusion that the report was favorable to the defendant and was unknown to Mr. Anderson.

The statements made by Mr. Anderson at the time of arraignment must be read in the context of the situation. Evidently the defendant had told Mr. Anderson what kind of a plea to bargain for. Mr. Anderson apparently was successful in his negotiations with the prosecuting attorney, but defendant apparently changed his mind. In the light of that factual background, Mr. Anderson's statement that "I don't know what is going on. I talked to him * * * if this isn't satisfactory, Your Honor, I don't know how I can represent him" can be read to reflect Mr. Anderson's surprise that defendant had changed his mind about the plea negotiations rather than as a manifestation of any unwillingness on Mr. Anderson's part to undertake his duties of loyal, effective representation. Indeed, Mr. Anderson's statement made shortly thereafter that "The case goes to trial, I will do the best I can to defend this man * * * To protect his rights and secure his day in Court" indicates that Mr. Anderson was ready and willing to perform his duty as a conscientious, dedicated defense attorney. It should be emphasized that Mr. Anderson did not request a continuance. Moreover, the record reveals that Judge Dunn, a judge with much experience in trying criminal cases, had no hesitation in setting the case for trial on May 21, 1970.

All things considered, then, we are convinced that defendant's allegation that he was denied the effective assist-

ance of counsel is not supported by the record and must be rejected as being without merit. See Chambers v. Maroney, 1970, 399 U. S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419.

Defendant contends that he was prejudiced because the court's Instruction No. 14 did not state that the jury must find that the value of the 1964 Chevrolet automobile exceeded $50 before they could find the defendant guilty of grand larceny. Instruction No. 14 informed the jury that if, under the court's instructions and evidence, they found beyond a reasonable doubt that the charge contained in the information was true and that the defendant on the day in question by fraud or stealth did take and steal and carry away a 1964 Chevrolet automobile belonging to Mr. Stenslokken with the intent to permanently deprive the owner thereof, it was the jury's duty to find the defendant guilty of grand larceny.

■ It must be noted that no exception was taken to this instruction at the time the instructions were settled. It has long been the rule in this state that challenges to instructions raised for the first time on appeal cannot be considered by this court. State v. Poppenga, 76 S.D. 592, 83 N.W.2d 518; State v. Zobel, 81 S.D. 260, 134 N.W.2d 101; State v. Gayton, 83 S.D. 141, 155 N.W.2d 919.

■ However, going to the merits of defendant's contention, we believe that the trial court committed no error. While it probably would have been better for the court to have included in Instruction No. 14 a requirement that the jury find beyond a reasonable doubt that the automobile in question had a value exceeding $50, we do not think the defendant was prejudiced by the omission of such a statement. Instructions must be considered as a whole. If when so considered they correctly state the law they will be held to be sufficient. State v. Sonnenschein, 37 S.D. 585, 159 N.W. 101; State v. Sturgis, 54 S.D. 245, 222 N.W. 681.

■ Instruction No. 1 stated the charge against defendant as set forth in the information, which included an allegation that the automobile was of the value of approximately $600. Instruction No. 3 which instructed the jury as to the elements of the offense of grand larceny in accordance with

SDCL 22-37-2, included a statement that grand larceny is larceny committed when the property taken is of a value exceeding $50. Instruction No. 9 informed the jury that the burden of proof rested upon the state to prove all the material allegations of the information and each and every material element of the offense charged beyond a reasonable doubt. Finally, Instruction No. 14, as summarized above, stated that if the jury should find beyond a reasonable doubt that the charge contained in the information was true, then it was their duty to find the defendant guilty of grand larceny. The state introduced evidence that the 1964 Chevrolet automobile had a value of $700 at the time of the offense. We believe that taken as a whole the instructions correctly and adequately stated the law to the jury and that there was no prejudice to the defendant.

The judgment is affirmed.

All the Judges concur.