STATE of South Dakota, Plaintiff and Appellee,

v.

Nicholas John POSS, Defendant and Appellant.

No. 12871.

Supreme Court of South Dakota.

Argued Feb. 21, 1980.

Decided Oct. 29, 1980.

Miles F. Schumacher, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on the brief.

Gary L. Monserud of Banks & Johnson, Rapid City, for defendant and appellant.

HENDERSON, Justice.

## ACTION

Nicholas John Poss (appellant) was convicted by a Pennington County jury on June 8, 1979, of first-degree burglary in violation of SDCL 22–32–1. Appellant appeals from the judgment of conviction urging three errors of law, separately discussed below. We affirm.

## FACTS

Appellant and a companion, William Michael Reed, were arrested and charged with first-degree burglary on December 18, 1978, at approximately 8:00 p. m. Appellant was taken to the Pennington County jail and held there during the night. Appellant was not arraigned on the complaint until 1:00 p. m. on December 21, 1978. A motion to suppress was made by appellant on January 10, 1979, due to the sixty-five hour interim between appellant's arrest and arraignment. On January 19, 1979, a hearing was held at which time the trial court ordered suppression of any oral or written statements made by appellant prior to arraignment relating to the offense charged. Appellant also moved to dismiss the charge against him. This motion was denied on March 9, 1979. The trial court adjudged that in light of the suppression ruling of January 19, 1979, appellant was not prejudiced by the delay preceding his arraignment.

There is no dispute that appellant's pre-arraignment detention was an intentional act resulting from the states attorney's desire to continue interrogating appellant prior to the appointment of an attorney. During this period, magistrates and judges were readily available for the arraignment

of appellant. The sole purpose for the delay was to secure additional information from appellant concerning unrelated crimes under investigation by the states attorney's office.

Appellant was tried by jury on June 8, 1979. His defense was based on the theory of diminished capacity, that is, appellant contends that he had not formed the specific intent required to commit the crime charged. Evidence received at trial indicated that appellant, who was eighteen years old at the date of his arrest, was of low mentality. A school psychologist, Irma Becker, testified that she had administered the Stanford–Binet Intelligence Quotient Test to appellant when he was ten years old and concluded that appellant was in the lower three percent of the population in his ability to learn. Dr. D. R. Gannon, a psychologist, testified that appellant scored a full-scale intelligence quotient of 72 when tested on the Wechsler Adult Intelligence Scale. Dr. Charles Lord, a psychiatrist, testified that appellant was like a child with respect to impulse control. Dr. Lord also testified that he believed appellant could tell the difference between right and wrong, at least within a structured situation. William Michael Reed, appellant's companion the night of the burglary, testified that appellant had been smoking marijuana and seemed "high" that evening. Appellant did not testify at trial. The jury convicted appellant of first-degree burglary on June 8, 1979.

## ISSUES

### I.

Did the trial court err in rejecting appellant's proposed jury instruction on misdemeanor entry SDCL 22–32–16 as a lesser included offense of the charge of first-degree burglary? We hold that it did not.

### II.

Did the trial court err by refusing to submit to the jury appellant's proposed instruction defining "intent" as including both cognitive and volitional elements? We hold that such a delineation was not necessary.

### III.

Did the trial court err in denying appellant's motion to dismiss the charge against him in lieu of the fact that appellant was held in detention for 65 hours prior to his arraignment? We hold that it did not.

## DECISION

### I.

The primary question put to the jury at trial was whether on the evening in question appellant formulated the necessary intent required to be convicted of first-degree burglary. The information charged in pertinent part that appellant "did then and there, enter in the nighttime an occupied structure . . . with intent to commit a crime therein, to wit: theft, in violation of SDCL 22·32·1." Appellant contends that he was entitled to an instruction under which the jury could have deliberated on the question of whether appellant was guilty of entry not amounting to burglary instead of burglary in the first degree. Such an instruction was timely proposed by appellant.

In *State v. O'Connor*, 265 N.W.2d 709 (S.D.1978), and *State v. Kafka*, 264 N.W.2d 702 (S.D.1978), in two concurring opinions by Justice Zastrow, two tests (legal and factual) were set forth to determine whether a lesser offense is necessarily included in a greater offense. The state does not contend the legal test has not been met. The state does, however, contend the factual test has not been met. The factual test is set out in *State v. Kafka*, 264 N.W.2d at 706.

"Where a request has been made to charge the jury on a lesser-included offense, the duty of the trial judge is determined by the evidence. If evidence has been presented which would support a conviction of a lesser charge, refusal to give the requested instruction would be

reversible error. (Citations omitted) There must be sufficient evidence, however, when read in the light most favorable to the defendant, which would justify a jury in concluding that the greater offense was not committed and that a lesser offense was, in fact, committed." *People v. Karasek*, 1975, 63 Mich.App. 706, 234 N.W.2d 761.

In *O'Connor*, Justice Zastrow noted that for the factual test to be met "there must be conflicting evidence in regard to the element of the greater offense that is not an element of the lesser." 265 N.W.2d at 716.

*State v. O'Connor*, supra, and *State v. Kafka*, supra, both involved the issue of whether the crime of misdemeanor entry (formerly under SDCL 22–32–16) was a necessarily included offense of felonious third-degree burglary (formerly under SDCL 22–32–9). The majority in both *O'Connor* and *Kafka* held that the factual test was not satisfied by the evidence at trial hence the trial court correctly refused the requested instruction regarding the lesser included offense.

> The only element in dispute was the "intent" of the defendant at the time he entered the building. The intent required by both SDCL 22–32–9 and SDCL 22–32–16, in these circumstances, is the same. If defendant had the intent to commit larceny or a felony, he was guilty, as the jury found, of third degree burglary; without the "intent," he was guilty of neither third degree burglary nor misdemeanor entry.

*State v. Kafka*, 264 N.W.2d at 706.

Appellant contends that the statutes which are involved in this case differ from those under which *O'Connor* and *Kafka* were decided. Appellant was convicted of first-degree burglary under SDCL 22–32–1 which provides:

> Any person who enters or remains in an occupied structure, with intent to commit any crime therein, is guilty of first degree burglary when:
> (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

(2) The offender is armed with a dangerous weapon; or
(3) The offense is committed in the nighttime.

First degree burglary is a Class 2 felony. SDCL 22–32–16, which appellant argues is a necessary included offense of SDCL 22–32–1, provides: "Any person who, under circumstances not amounting to burglary, enters a structure with intent to commit any crime is guilty of a Class 1 misdemeanor." Appellant maintains the phrases "intent to commit any crime therein" in SDCL 22–32–1 and "intent to commit any crime" in SDCL 22–32–16 indicate that SDCL 22–32–1 requires the element of specific intent to be present for one to be convicted of first-degree burglary, while SDCL 22–32–16 only requires the element of general intent. We do not agree.

■ General intent means the intent to do that which the law prohibits; an individual need not have intended the precise harm or precise result which eventuated. Specific intent means the intent to accomplish the precise act which the law prohibits. *See* Black's Law Dictionary, 1255 (5th ed. 1979). The evidence presented to the trial court indicates that appellant *specifically intended* to commit a burglary. William Reed testified at trial that it was appellant who first suggested that they commit the burglary and the area where a burglary would be easily accomplished. Further, Reed testified that it was appellant who broke the window allowing entry to the burglarized house and searched the house looking for guns, alcohol, and other valuables. Other than the argument that appellant's mentality precluded him from forming specific intent to burglarize, no evidence was offered to contradict the testimony of Reed. Appellant did not testify. In light of the evidence presented, and assuming arguendo that first-degree burglary requires specific intent while misdemeanor entry requires general intent, we hold that the factual test stated in *O'Connor* and *Kafka* was not met.

There was not sufficient evidence in regard to any element of the greater offense

which would justify a jury in concluding that first-degree burglary was not committed. Thus, the trial court did not err in rejecting appellant's proposed jury instruction as to a lesser included offense of the offense charged.

## II.

■ Appellant secondly contends the trial court erred by failing to give Proposed Instruction No. 1, which reads:

Specific intent, as required for the crime of burglary in the first degree, refers to mental action at its most advanced point, or as it actually accompanies an outward, corporal act which has been determined on. Intent shows the presence of will in the act which consummates a crime. It is the exercise of intelligent will, the mind being fully aware of the nature and consequences of the act which is about to be done, and with such knowledge, and with full liberty of action, willing and electing to do it.

This instruction indicates that specific intent entails both cognitive and volitional elements of intent. We hold that such a delineation is not necessary.

■ The jury instructions referring to intent adopted by the trial court were as follows:

### INSTRUCTION NO. 8

The essential elements of the offense of burglary in the first degree as charged in the information, each of which the State must prove beyond a reasonable doubt, are: . . .

3. That the defendant entered therein with the intent to commit the crime of theft.

### INSTRUCTION NO. 9

An essential element of the offense of burglary in the first degree as charged in the information is that the entering or remaining in an occupied structure was with the specific intent to commit the crime of theft; that is, with the specific intent of taking or exercising control over the property of another with the intent to deprive the owner of it. The offense is complete when the entering or remaining is made with such specific intent regardless of whether any property is actually taken and carried away.

### INSTRUCTION NO. 10

When a defendant is charged with a crime which requires that a certain specific intent or mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom if, at the time when the crime allegedly was committed, the defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from forming the specific intent or mental state essential to constitute the crime with which he is charged.

If from all the evidence you have a reasonable doubt whether defendant was capable of forming such specific intent or mental state, you must give defendant the benefit of that doubt and find that he did not have such specific intent or mental state.

Jury instructions are to be considered as a whole, and if the instructions when so read correctly state the law and inform the jury, they are sufficient. *State v. Westphal*, 273 N.W.2d 155 (S.D.1978); *State v. Townsend*, 89 S.D. 167, 231 N.W.2d 367 (1975); *State v. Watkins*, 85 S.D. 573, 187 N.W.2d 265 (1971). The instructions given by the trial court sufficiently advised the jury on the necessary element of specific intent.

## III.

Appellant argues that the trial court erred in denying his motion to dismiss due to appellant not being arraigned until 65 hours after being arrested and taken into custody. SDCL 23A–4–1 provides: "A law enforcement officer making an arrest shall, without unnecessary delay, take the arrested person before the nearest available committing magistrate. . . ." The trial court granted appellant's motion to suppress

thereby ordering suppression of any oral or written statements made by appellant prior to arraignment.

■ Illegal detention is not a ground for dismissal absent a showing of prejudice to the defendant. *State v. Erdmann*, 292 N.W.2d 97 (S.D.1980); *State v. Provost*, 266 N.W.2d 96 (S.D.1978). Further, illegal detention is a nonconstitutional and nonjurisdictional defect. *Application of Dutro*, 83 S.D. 168, 156 N.W.2d 771 (1968); *Application of Kiser*, 83 S.D. 272, 158 N.W.2d 596 (1968). In light of the aforementioned order of suppression, appellant has failed to demonstrate that he was prejudiced due to the delay in arraignment, consequently, the trial court did not err in dismissing appellant's motion to dismiss.

In *Provost*, an eight day pre-arraignment delay was involved due to an apparent lack of judicial accessibility over the Thanksgiving holiday. Similarly, *Dutro* involved a five day delay occurring over the Labor Day weekend when there was limited availability of arraignment personnel. Here, however, the 65 hour delay was the result of a willful, intentional act by the Pennington County States Attorney's Office in an attempt to get information from appellant regarding other crimes prior to the appointment of a lawyer. Judges and magistrates were available to conduct a speedy arraignment. Appellant's detention was not the result of accident, inadvertence, or even gross negligence. The States Attorney's actions were diametrically opposed to the purpose and meaning of SDCL 23A–4–1. Indeed, the States Attorney stated at the suppression hearing of February 28, 1979, that given similar circumstances, he would do the same thing again!

Although the trial court's order of suppression foreclosed prejudice from occurring as to appellant's position at trial, we condemn the pre-arraignment tactics of the States Attorney in this case. Calculated delay in a defendant's right to be taken before a judicial officer cannot be justified by self-ordained zeal and has no place in this state's system of criminal justice.

The judgment of conviction is affirmed.

All the Justices concur.