## STATE v. EDMUNDS.

Pen. Code, § 2, declares that no act or omission shall be deemed criminal or punishable save as prescribed by the Code, by some statute which it continued, or by such laws as are not in conflict with the Code, and section 241 defines manslaughter in the first degree as a killing perpetrated without a design to effect death and in a heat of passion, but in a cruel and unusual manner or by means of a dangerous weapon, unless committed under such circumstances as to constitute excusable or justifiable homicide. *Held*, that the phrase "when perpetrated without a design to effect death and in a heat of passion" was employed to express the distinction between homicide in the first degree and murder, and where one kills another in a cruel or unusual manner, without excuse or justification, or by means of a dangerous weapon under circumstances which do not excuse or justify the killing, the crime is at least manslaughter in the first degree.

By Rev. Code Cr. Proc. § 219, the sufficiency of pleadings is to be determined by the rules prescribed by the Code. Section 221 declares that an indictment must contain a statement of the acts constituting the offense in ordinary and concise language, so as to enable one of common understanding to know what is intended. Section 228 declares that words used to define a public offense need not be strictly pursued in an indictment, but that words conveying the same meaning may be used. By section 230

no indictment is insufficient by reason of a defect not tending to the prejudice of the substantial rights of the defendant.      Section 227 provides that words in an indictment must be construed in their usual acceptation, except phrases defined by law, which are to be construed by their legal meaning.  By Pen. Code, § 241, manslaughter in the first degree is a killing perpetrated without a design to effect death and in a heat of passion, but in a cruel and unusual manner, and by means of a dangerous weapon, unless under such circumstances as to constitute excusable or justifiable homicide.  *Held,* that an indictment charging that defendant feloniously and willfully made an assault with a wooden club upon a person, and with the club inflicted a wound which resulted in death, was sufficient to sustain a conviction for manslaughter in the first degree.

(Opinion filed, Oct. 24, 1905.)

Error to Circuit Court, Clay County.      Hon. E. G. Smith, Judge.

Haiden C. Edmunds was convicted of manslaughter in the first degree, and he brings error.  Affirmed.

*J. L. Jolley and French & Orvis,* for plaintiff in error.

The elements of manslaughter in the first degree, as defined by our statute are as follows: The crime must be perpetrated without design to effect death and in the heat of passion but in a cruel and unusual manner, or by means of a dangerous weapon, and under such circumstances as do not constitute excusable or justifiable homicide.  Manslaughter as defined by our statute, is a purely statutory offense, and under a familiar rule of law, the indictment must set out the offense in statutory or other equivalent language.  At common law manslaughter was defined as "the unlawful and felonious killing of another without malice, express or implied."  This definition bears little resemblance to the offense as defined by our code.  The punishment was also different.  See 4 Bl. Com. 491; Wharton on Homicide, Sec. 4.  In the adoption of our penal code, the legislature saw fit to give this offense a new definition and provide a new punishment, and this constitutes it, as heretofore stated, a purely statutory offense.  As supporting this position we call the court's attention to the case of Jenning v. State, 7 Tex. App. 350, where this whole matter is discussed, citing authorities, and holding as claimed above, that where the offense is statutory, it must be alleged in the words of the statute, or other equivalent language.  We

also cite the following authorities as sustaining similar views: Fouts v. State, 4 Green, 500; Reddan v. State, 4 Green, 137; Com. v. Turner, 71 Ky. 1; Jennings v. State, supra; People v. Congleton, 44 Cal. 924; People v. Murat, 45 Cal. 281; People v. Jacobs, 29 Cal. 579. A wooden club is not necessarily a dangerous weapon. Kruget v. State, 1 Neb. 365, and authorities cited; 23 Tex. 579; Kouns v. State, 3 Tex. App. 13. It not being alleged in the indictment that the wooden club was a deadly weapon, it was, under the authorities above cited, necessary that the weapon should be so described that the court could say that it was a dangerous weapon. People v. Congleton; People v. Murat, supra; People v. Jacobs, supra. It is a rule of criminal pleading, that when a statute defining a felony contains a negative averment which is a material and essential part of the definition of the offense, such negative averment must be charged in the indictment. Baker v. People, 49 Ill. 308; State v. McIntyre, 19 Minn. 93; State v. Tracy, 82 Minn. 317, 84 N. W. 1015; State v. Marks, 46 Atl. 757; Reddan v. State, 4 Greene, 137; This exception may be designated by the word "unless" as in the statute defining manslaughter, or by the word "except." State v. McIntyre, supra; Comstock v. Hart, 11 Cush. 130;

*Philo Hall, Attorney General,* and *E. B. Healy, State's Attorney* (*H. D. Tilton, E. C. Ericson,* and *Aubrey Lawrence, of counsel*), for the State.

The statute, Section 242 Penal Code, is not a rule of pleading but a guide to the conduct of the trial prescribing the proofs requisite to a conviction. Territory v. Bannigan, 1 D. 451; Kennedy v. People, 39 New York 245; People v. Hyndman, 33 Cal. 1; McClain Criminal Law, Section 377. It is not necessary to use the language of the statute if the facts stated set forth all the elements of the offense defined by law. Territory v. Bannigan, supra. As to the first phrase, "in the heat of passion." State v. Matakovich reported in 61 N. W. 677. The courts make a distinction between "deadly" and "dangerous." A weapon might be considered "dangerous" which would not be "deadly." 13 Cyc. 257 and 283 and cases cited; State v. Lynch, 88 Me. 195, 3 Atl. 978; State v. Larkin, 24 Mo. App. 410; Jeffries v. Commonwealth, 84

Ky. 237, 1 S. W., 442. Exceptions should be negatived only where they are descriptive of the offense, or define it; but where they afford matter of excuse merely they are to be relied upon in defense. State v. Donalson, 12 S. D., 263; Territory v. Scott, 2 D. 212. The fact that the court instructed the jury that the indictment charges a higher degree if erroneous, was error against the state and not error prejudicial to the defendant, and the supreme court should direct the trial court to render judgment for manslaughter in the second degree. The Supreme court has the power to direct that the proper judgment be entered. Ter. v. Conrad 1 Dak. 348, 46 N. W. 605; State v. Johnson, 3 N. D., 150, 54 N. W. 547; State v. Cruickshank, 100 N. W. 697; In re Taylor 7 S. D. 382 and cases there cited. If the court instructed the jury that the indictment charged a higher degree than it really did, it is error without prejudice. Thompson on Trials, Sec. 2402.

HANEY, J. The defendant having been convicted of manslaughter in the first degree, the question arises whether the following indictment is sufficient to sustain such conviction: "The grand jurors of the state of South Dakota, within and for the county of Clay, duly and legally impaneled, charged and sworn according to law, upon their oaths present: That Haiden C. Edmunds, late of said county, yeoman, on the first day of July, in the year of our Lord one thousand nine hundred and four, at the county of Clay and state of South Dakota, did feloniously and willfully make an assault on one Willie J. Williams with a certain wooden club, which he, the said Haiden C. Edmunds, then and there had and held in his hands, and did then and there feloniously and willfully, with the said wooden club as aforesaid, strike and beat the said Willie J. Williams, and then and there, with said wooden club in the manner aforesaid, did inflict on the said Willie J. Williams, on the head of the said Willie J. Williams, one mortal bruise and wound, of which mortal bruise and wound, the said Willie J. Williams thence continually languished until the second day of July, A. D. 1904, on which last-named day the said Willie J. Williams, in said Clay county, of said mortal bruise and wound, did die, contrary to the form of the statute in such case made and provided and against the peace and dignity of the state of South Dakota."

In this state all the forms of pleading in criminal actions and rules by which the sufficiency of pleadings is to be determined are those prescribed by the Revised Code of Criminal Procedure. Rev. Code Cr. Proc. § 219. An indictment or information must contain "a statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." Id. 221. "Words used in a statute to define a public offense need not be strictly pursued in the indictment or information; but other words conveying the same meaning may be used." Id. 228. "No indictment or information is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in matter of form, which does not tend to the prejudice of the substantial rights of the defendant upon the merits." Id. 230. The Revised Penal Code contains this declaration: "No act or omission shall be deemed criminal or punishable except as prescribed or authorized by this Code, or by some of the statutes, which it specifies as continuing in force, or such laws as do not conflict with the provisions of this Code." Rev. Pen. Code, § 2. What, then, are the essential elements of manslaughter in the first degree as defined by the Penal Code? Does the indictment in this action contain a statement of acts constituting that offense in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended?

So far as applicable to this case, the killing of one human being by another is manslaughter in the first degree "when perpetrated without a design to effect death and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon, unless it is committed under such circumstances as constitute excusable or justifiable homicide." Rev. Pen. Code, §§ 241, 254. The distinction between murder and voluntary manslaughter at common law has been stated in tne following language: "Voluntary manslaughter is homicide intentionally committed under the influence of passion, suddenly arising from adequate cause, but neither justified nor excused by law. It is distinguished from murder solely by the absence of malice as a constituent element of the crime. It is not

the intent to kill, nor the character of the weapon used, which determines the grade of homicide, but simply the inquiry whether such intent or the use of such weapon proceeded premeditately from that wickedness of disposition and hardness of heart which the law denominates 'malice,' or whether the intent was formed suddenly, under the influence of some violent emotion, which for the instant overwhelmed the reason of the slayer. If from the former, the crime is murder; if from the latter, it is manslaughter only. This rule that a killing committed under the influence of sudden passion produced by adequate provocation is manslaughter, and not murder, is founded, not upon any conception that malice and passion may not coexist in the mind of a slayer, but upon the legal presumption that the act cannot proceed from both impulses. Either one or the other must be the dominant motive and give character to the crime. In the eye of the law malice excludes passion, and passion presupposes the absence of malice. They cannot coexist as the moving cause of a homicide." 21 Am. & Eng. Ency. Law (2d Ed.) 172. Having these principles in mind, it would seem that the words "when perpetrated without a design to effect death and in a heat of passion" were employed by the Legislature merely to express the distinction between manslaughter in the first degree and the more serious crime of murder. If this be so, the phrases "in a heat of passion" and "without a design to effect death" should be considered as one clause, descriptive of that "wickedness of disposition and hardness of heart" constituting the "malice aforethought" which has always been regarded as an essential element in the crime of murder. It is therefore the absence, rather than the presence, of a certain mental condition, which is intended to be expressed by the words under discussion. So, when one human being kills another in a cruel or unusual manner under circumstances which neither excuse nor justify the killing, or where one human being kills another by means of a dangerous weapon under circumstances which neither excuse nor justify the killing, the crime is at least manslaughter in the first degree, and may be murder if the killing is done with the malice essential to that offense.

Having determined the nature of the crime of which the ac-

cused was convicted, the next inquiry is whether the indictment contains a sufficient statement of acts constituting such crime. The substance of such statement is that the defendant, on July 1, 1904, in Clay county, did feloniously and willfully strike, beat, bruise and wound one Willie J. Williams with a wooden club, of which wound Williams died on the following day. Words in an indictment must be construed in their usual acceptation in common language, except words and phrases defined by law, which are to be construed according to their legal meaning. Rev. Code Cr. Proc. § 227. The word "willfully" implies a purpose or willingness to commit the act referred to and excludes the inference that it might have resulted from accident or mistake. "Felonious homicide" is the killing of one human being by another without justification or excuse. Anderson, Law Dict. 512. "A dangerous weapon" is any weapon dangerous to life as actually used. Id. 1110. If the wooden club produced death, it was necessarily a dangerous weapon as actually used in this instance. Jeffries v. Commonwealth 1 S. W. 442. So it appears on the face of the indictment that the accused killed another human being by means of a dangerous weapon, without excuse or justification, and that the acts of the accused which caused the other's death were done intentionally, and not accidentally or through mistake. If so, he was at least guilty of manslaughter in the first degree, and certainly cannot complain of not having been charged with murder; and, though the indictment might easily have been so framed as to avoid any question concerning its sufficiency, it is so clear that its defects and imperfections of form could not have prejudiced any substantial right of the defendant upon the merits, we have no hesitancy in holding that it is sufficient to sustain the conviction. Attention has been called to a case in Oklahoma where identically the same statutory definition of the same crime was involved, and in which it was decided that an indictment was not sufficient to sustain a conviction of manslaughter in the first degree, because it did not allege that the killing was done in a heat of passion. Barker v. Territory, 78 Pac. 81. We fully appreciate the weight of such a precedent, but, with all due respect to the learned court which rendered that decision, we are compelled to dissent from the conclusion reached therein.

Defendant's principal objections to the court's charge relate to the sufficiency of the indictment, and require no further attention. Those relating to the law of self-defense have been carefully considered. Taken as a whole, the charge was eminently fair and correctly submitted all the issues involved.

The order refusing a new trial and the order denying defendant's motion in arrest of judgment are affirmed.