## STATE v. FULWIDER.

Where, on a trial for the larceny of a saddle, the evidence showed that accused, if he took the saddle, took it with intent to steal it for the use of a third person, to relieve him from riding bareback from accused's premises to a place where the third person had a saddle, evidence of a prior theft of horses by accused and the third person and another, and that the third person was riding out of the country at the time accused stole the saddle to avoid detection for the larceny of the horses, was inadmissible to show intent or motive for stealing the saddle.

Where accused, on trial for larceny, admitted the taking, but claimed that he owned the property, evidence of a similar larceny may be admissible to show his bad faith and intent to steal.

Evidence of other crimes, not connected with the crime charged, is inadmissible, except to show knowledge, intent, or design, or motive, where such matter is in issue.

Where the court permits the state's attorney, after the selection of a jury, to indorse names of witnesses on the information, accused, if surprised thereby, must ask for a continuance to prepare himself to meet such witnesses, and in the absence of such application no prejudice can be presumed.

Permission to indorse the names of witnesses on an information at the trial rests largely within the discretion of the trial court, and, in the absence of an abuse or bad faith on the part of the state's attorney in purposely withholding the names of witnesses until the trial, resulting in prejudice to accused, the allowance of the indorsement is not ground for reversal.

The granting or denial of a continuance on the ground of surprise is a matter largely within the discretion of the trial court.

(Opinion field, February 14, 1912.)

Appeal from Circuit Court, Lyman County. Hon. FRANK B. SMITH, Judge.

J. A. Fulwider was convicted of larceny, and he appeals. Reversed, and new trial ordered.

*Preston & Wagner*, for appellant. *Royal C. Johnson, Atty. Gen., F. C. Wederath, State's Atty.*, and *James Brown Asst. State's Atty.*, for the State.

McCOY, P. J. In this case defendant, who is the appellant, was convicted in the circuit court of grand larceny under an information charging the stealing of a saddle on the night of October 4, 1909, valued at $65, the property of one Danforth.

[1] The principal assignment of error urged for a reversal is that the court permitted, over the objections and exceptions of defendant, evidence of another independent offense, other than that charged in the information on which defendant was then being tried. Stripped of unnecessary matter, the record shows that one Flynn, but for whose testimony no offense at all was shown, testified that about the 15th or 16th of September, 1909, he and one Van Schaak and this defendant stole from one Taft, in Brule county, a bunch of nine head of horses; that these horses were taken across to the west side of the Missouri river and kept in the hills in the vicinity of defendant's residence until about September 30th following, when he (Flynn) and Van Schaak and defendant drove said horses south and stopped with them near Gregory the first days of October; that thereafter, during the first part of October, he (Flynn) took said horses farther south, down near the Nebraska line, and disposed of them, and then returned to his place of residence in Lyman county, near that of defendant. The complaining witness, Danforth, testified that his saddle was taken from his barn on his premises, one mile south of the residence of defendant, on the night of November 4, 1909. The testimony shows that the city of Chamberlain is some 20 miles north of defendant's residence, and that the city of Gregory is about 24 miles south of defendant's residence. On the morning of November 4th, defendant left home on horseback, went north and crossed the river, went to Van Schaak's place, and rode to

Chamberlain with Mr. and Mrs. Van Schaak. Defendant testified that he went to Chamberlain to procure medicine for his wife, who was then confined to her bed, having, on the 2d day of November, given birth to a child; that he returned from Chamberlain with the Van Schaaks, and then proceeded homeward on horseback; that Flynn, who was at Van Schaak's, also accompanied defendant on his homeward journey; that when they arrived at defendant's residence Flynn proceeded on southward, and that was the last defendant saw of him at that time. Flynn testified that when defendant and Van Schaak returned from Chamberlain on November 4th they told him that Taft had found his horses that were stolen from him in September, and that he (Flynn) should leave the country, as he was liable to be caught; that it was then agreed that he (Flynn) should leave the country immediately; that he should proceed on horseback down into Nebraska; that Van Schaak loaned him his saddle; that it was agreed that he was to leave Van Schaak's saddle at Gregory, and that defendant would later procure the same and return it to Van Schaak; that he (Flynn) had a saddle of his own at Herrick's place, somewhere near Gregory. Flynn further testified that when he arrived at defendant's residence that evening he stated to defendant that he would leave the Van Schaak saddle with defendant, and would ride bareback down to where his own saddle was, and not put defendant to the trouble of going to Gregory after the Van Schaak saddle; that defendant then said, "Wait awhile, and I will get you a saddle;" that defendant then rode away, and in about half an hour returned with a saddle, which answered the description of the Danforth saddle, and gave it to him (Flynn); that he then proceeded on his way down into Nebraska, where he later sold the saddle given to him by defendant. All this testimony of Flynn in regard to the stealing of the Taft horses and as to defendant going and procuring the saddle for him, and all the conversation about Flynn going to leave the country, was denied by defendant. It is the contention of the state that the evidence relating to the theft of the Taft horses was properly admissible for the purpose of showing intent and motive on the part of defendant in stealing the saddle of Danforth. We are of the

opinion that this contention is not tenable. Under the circumstances of this case, the evidence in relation to the theft of the Taft horses could throw no possible light upon the question of intent. If defendant went to the barn of Danforth in the nighttime and took and carried away the saddle of Danforth, under the circumstances related by the witness Flynn, then defendant would not be heard to say that he did not intend to steal.

[2, 3] If defendant admitted the taking, but claimed that the saddle belonged to him, and that he thought the saddle was his own property, that would constitute a good defense, although the saddle did in fact belong to Danforth, providing the evidence was such as to justify defendant in the honest belief, in good faith, that he owned the saddle, and on the trial of a larceny of that character evidence of a similar larceny by defendant might be admissible to show his bad faith and intent to steal on the charge for which he was on trial. But there were no issues of that character in the case at bar. If he took the saddle as Flynn says he did, the intent could by no possibility have been otherwise than to steal, and the law would conclusively infer the intent from the act done. The theft of the Taft horses could by no possibility affect the question of intent in the taking of the saddle. Neither was the evidence of the theft of the Taft horses admissible to show design or motive for stealing the saddle. Flynn states that when Van Schaak and defendant told him to leave the country that it was agreed that he should take Van Schaak's saddle and use it as far as Gregory; that Flynn had a saddle of his own at Herrick's place; that defendant was to return the Van Schaak saddle from Gregory to Van Schaak, but that when Flynn stated he would ride bareback from defendant's premises to Herrick's, defendant then said, "I will get you a saddle." It is impossible from this circumstance to find anything connecting the motive or design for stealing the saddle with the theft of the Taft horses. Flynn was provided otherwise with sufficient saddles on which to leave the country. It was not necessary for defendant to steal this saddle for Flynn to leave the country. The only possible motive for obtaining the Danforth saddle was to relieve Flynn from riding

Vol. 28 S. D. 40.

bareback from defendant's premises to Herrick's—a matter in no way connected with the theft of the Taft horses, and a matter that in no way inconvenienced or benefited defendant, excepting that it would save defendant from carrying the Van Schaak saddle back from Gregory. The evidence shows that defendant then intended to and did go to Gregory a few days later. We are clearly of the opinion that defendant was deprived of a fair and impartial trial by reason of the admission of the testimony in relation to the theft of the Taft horses. It seems to be generally held that evidence of other crimes, in no manner connected with the offense charged in the information or indictment on which the accused is being tried, is not admissible, except for the purpose of showing knowledge, intent, or design, or motive, where there is such an issue in the case. We are of the opinion that the evidence admitted in this case was not within any of the exceptions to the general rule. Sections 300 to 349, Wigmore, Ev.; Jones, Ev. 143; Elliott, Ev. 3057, 2720, 2917.

[4-6] Appellant also assigns as error that the state's attorney was permitted, after the jury had been selected and sworn, to indorse the names of sundry witnesses for the state upon the information. We are of the opinion that there was no showing that defendant was prejudiced thereby, and that no error is sufficiently shown to alone warrant a reversal of the judgment. In State v. Matejousky, 22 S. D. 30, 115 N. W. 96, this court said: "One accused of crime is not entitled, as a matter of right, to previous notice of all witnesses who may be called by the state. No such right is guaranteed by the Constitution. The prosecution may be surprised by unexpected evidence, as well as the defense." If the defendant was surprised by the indorsement of the names of such witnesses upon the information, it was his duty to have made timely motion for a continuance or postponement of the trial, in order to prepare himself to meet such witnesses, based upon that ground. In the absence of a motion to postpone or continue the case on the ground of surprise, no prejudice can be presumed from the indorsement of names on the information, although after the acceptance of the jury. The indorsement of the names of

witnesses upon an information on the trial is a matter largely within the discretion of the trial court, and, in the absence of some showing of abuse, or some bad faith on the part of the state's attorney in purposely withholding the names of such witnesses until such time, resulting in substantial prejudice to the accused, the order of the court, permitting the indorsement of such names, will not constitute ground for reversal. Even where the defendant moves for a continuance of the case on the ground of surprise, the granting or denial of such motion is largely within the discretion of the trial court. State v. Le Pitre, 54 Wash. 166, 103 Pac. 27; State v. Quinn, 56 Wash. 205, 105 Pac. 818; Barney v. State, 49 Neb. 515, 68 N. W. 636; Rauschkolb v. State, 46 Neb. 658, 65 N. W. 776; State v. Holedger, 15 Wash. 443, 46 Pac. 652; State v. Wilmbusse, 8 Idaho, 608, 70 Pac. 849; State v. Rooke, 10 Idaho, 388, 79 Pac. 82; State v. Carpenter, 56 Wash. 670, 106 Pac. 206; State v. Lewis, 31 Wash. 515, 72 Pac. 121; People v. Baker, 112 Mich. 211, 70 N. W. 431. The states from which the above citations are taken have statutes substantially similar to the statute of this state upon the question of the indorsement of the names of witnesses upon an information.

The judgment and order denying a new trial, appealed from, are reversed, a new trial ordered, and the cause remanded for further procedure.