STATE, Respondent v. LANGE, Appellant

(152 N.W.2d 635)

(File No. 10311. Opinion filed September 18, 1967)

**Maule, Maule, Day & Maulis, William F. Day, Jr.,** Winner, for defendant and appellant.

**Frank Farrar,** Atty. Gen., **Walter Andre,** Asst. Atty. Gen., Pierre, **John J. Simpson,** Winner, for plaintiff and respondent.

HOMEYER, Presiding Judge.

Defendant, Frank R. Lange, was charged with and found guilty of manslaughter in the first degree and appeals. He asserts (1) error in refusing to quash the information for failure to properly state the offense (2) insufficiency of the evidence to support the verdict (3) misconduct of the state's attorney, and (4) prejudicial error in receipt of evidence and instructions.

The information charged the defendant on August 3, 1965 "did, feloniously and willfully make an assault upon a human being, William H. Kewley, without a design to effect death and by such action inflicted injury upon said William H. Kewley which resulted in the death of said William H. Kewley, and did then and there commit the crime of Manslaughter In The First Degree * * *".

Homicide is manslaughter in the first degree "When perpetrated without a design to effect death and in a heat of passion, but in a cruel and unusual manner, or by means of a dangerous weapon; unless it is committed under such circumstances as constitute excusable or justifiable homicide". SDC 13.2013(2). It is clear from the record and briefs that it was intended to charge the defendant under the quoted subsection of the manslaughter statute. No weapon was employed; hence the criminal act alleged must have been "perpetrated without a design to effect death and in a heat of passion, but in a cruel and unusual manner".

This court in State v. Belt, 79 S.D. 324, 111 N.W.2d 588, reviewed our statutes and decisions on the sufficiency of criminal pleading and it is manifest that considerable liberality is permitted. Technicalities have been abolished and it is only necessary to plead the offense in its usually designated name in plain, ordinary language. An information is sufficient if it en-

ables a person of common understanding to know what is intended from the language contained therein. However, it "must apprise the defendant with reasonable certainty of the accusation against him so that he may prepare his defense and plead the judgment as a bar to a subsequent prosecution for the same offense." State v. Sinnott, 72 S.D. 100, 30 N.W.2d 455. Despite liberality of interpretation pleading the essentials of the offense is not obviated and "where the manner, means or other facts are necessary ingredients of the offense, it must be pleaded * * *". State v. Belt, supra.

An information is sufficient if it employs the language of the statute or its equivalent, State v. Bayliss, 59 S.D. 585, 241 N.W. 608, State v. Thomas, 78 S.D. 568, 105 N.W.2d 549, State v. Judge, 81 S.D. 128, 131 N.W.2d 573, but it must at least in substance contain the necessary elements of the offense. State v. Paul, 41 S.D. 40, 169 N.W. 739; State v. Taylor, 44 S.D. 332, 183 N.W. 998.

In State v. Edmunds, 20 S.D. 135, 104 N.W. 1115; 21 S.D. 5, 108 N.W. 556, the defendant was convicted of manslaughter in the first degree under a charge that he struck and beat the deceased with a wooden club inflicting wounds causing death. Contention was made that it did not charge murder or manslaughter in the first degree and at most charged manslaughter in the second degree. A divided court held the information suf-ficient in that it charged the accused with willfully killing another human being with a wooden club, which if it produced death as used was necessarily a dangerous weapon, without excuse or justification and the acts which caused the death were intentional and not accidental or by mistake. The court said:

"So, when one human being kills another in a cruel or unusual manner under circumstances which neither excuse nor justify the killing, or where one human being kills another by means of a dangerous weapon under circumstances which neither excuse nor justify the killing, the crime is at least manslaughter in the first degree, and may be murder if the killing is done with the malice essential to that offense."

■ ■ Where no dangerous weapon was employed as here, a vital and essential ingredient of the crime of manslaughter in the first degree is that it be perpetrated in a cruel and unusual manner under SDC 13.2013(2). See State v. Knoll, 72 Kan. 237, 83 P. 622. Such are the words of the statute. Neither these words nor any equivalent were used in the information. At most the information may have charged manslaughter in the second degree, see SDC 13.2016, but the defendant was not convicted of that offense and thus the conviction must be reserved and a new trial granted.

Although the foregoing disposes of the appeal, we are of the opinion that the judgment should also be reversed because the evidence is not sufficient to sustain a conviction of manslaughter in the first degree under SDC 13.2013(2).

The decedent was a small man, grayish, 62 years old and weighed about 130 pounds. He lived on a farm or ranch near Winner and drove to town about midmorning on August 2, 1965. He spent most of his time in bars until the altercation which resulted in his death and apparently had consumed a considerable amount of intoxicating beverages.

His son, James, and two sons-in-law, Harold McElfresh and Joe Conway, quit work in late afternoon or early evening and went on a beer drinking spree which brought them to Winner about 10:30 p. m. They made the rounds of the bars drinking considerable at each and met up with the decedent at one of them. Joe Conway left for home early, but the decedent, his son, and McElfresh remained in Winner and continued to patronize its bars.

The defendant arrived at the Peacock Bar about 11:00 p. m., where he met a young salesman, James Patrick Devitt. Both Devitt and the defendant had some drinks. McElfresh and James Kewley came into the Peacock about midnight and the decedent about a half hour later. There is no evidence of any trouble between these men in the Peacock. The record is not too clear as to who left first or the sequence of departure, but it appears some trouble developed between the decedent and Devitt out-

side the Peacock about 1:00 a. m. which was closing time. They wrestled in the street and gutter and were separated by James Kewley. Foul language was exchanged and the noise created awakened neighboring tenants. In the course of events the decedent stripped himself to the waist in preparation for physical encounter and was grabbed by the defendant who either dropped or hurled him onto the sidewalk causing a fatal injury to his back from which he died two days later. The defendant also threw son James onto the sidewalk. The evidence is clear that the decedent sustained his injury from a single momentary assault.

The age of the defendant does not appear in the record, but he apparently is a much younger man, and a witness for the state who was aroused from his sleep by the noise and viewed the disturbance from a second floor apartment about 250 feet distant, described him as having a build like Charles Atlas. The decedent, though older, and considerably lighter in weight, led an active life and was able to clamp a hold on Devitt causing him to lose consciousness shortly before he sustained the fatal injury. The testimony also shows that less than two months before he sheared eighty 100-pound sheep in two days aided by a pulley device to relieve strain on his back.

■ The phrase "in a cruel and unusual manner" appears in the manslaughter statutes of a number of states and courts have attempted to define it and apply it to variant factual situations. In State v. Knoll, 72 Kan. 237, 83 P. 622, a burly defendant beat a sickly and slightly built hunchback until the defendant's fists were bloody. The victim suffered a broken leg, numerous lacerations and other injuries which led to complications and eventually death. Both participants had been drinking. The evidence was held insufficient to sustain a conviction and the court said "there must be some refinement or excess of cruelty sufficiently marked to approach barbarity, and to make it especially shocking; and the unusual character of the manner displayed must stand out as sufficiently peculiar and unique to create surprise and astonishment and to be capable of discrimination as rare and strange." Though the savageness of the assault, the deceased's pain and injuries coupled with the

disparity between defendant's physical appearance and decedent's presented a spectacle of brutality, still that court said the manner of death was very ordinary in a fight of this type and lacked the unusual quality contemplated by the legislature.

In State v. Diggs, 194 Kan. 812, 402 P.2d 300, a 58 year old defendant beat a frail 78 year old man, who offered no resistance, in a drunken jealous rage striking him several times with his fists, breaking several ribs, blacking both eyes and rupturing his esophagus. The victim died of his injuries two days later. The Kansas court continued to adhere to its position in the Knoll case as to what constituted a cruel and unusual manner and said the facts presented a stronger case for reversing a conviction than in the Knoll case.

The New York court under a statute very similar to ours, in People v. Vollmer, 299 N.Y. 347, 87 N.E.2d 291, in an opinion written by Judge Desmond said "To be 'cruel and unusual' the manner of commission of a homicide must have in it some aggravating element, something out of the ordinary, something shocking or barbaric". It was said the phrase could not be applied to a case where a flurry of blows from a defendant's fists sent the other man to his death. However, when the victim was a woman and her death was not caused by a mere flurry of blows from the defendant's fists, but from a sustained beating over a thirty to forty-five minute period by a drunken defendant weighing 100 pounds more than the decedent, the same court said in People v. Lee, 300 N.Y. 422, 91 N.E.2d 870, it was for the jury to say whether or not the manner of death was cruel and "inhuman" in fact.

■ ■ Giving the state's evidence its most favorable construction it is manifest that the decedent met his death from injuries sustained in an ordinary drunken street brawl in which the defendant only used his bare hands in throwing the victim once to the pavement or sidewalk. There was nothing shocking or barbaric about the manner of death. A single momentary blow, or thrust to the pavement, applied to a willing combatant even when applied with considerable force is not sufficiently unique in ferocity, duration and manner of accomplishment to

make it a question for the jury to decide, either as to whether the killing was cruel or not, or whether it was usual or unusual.

Other error urged has been considered and we doubt if any would be of sufficient consequence to merit reversal. Nevertheless, we do not condone the conduct of counsel either for the prosecution, or for the defense,[1] and the type of bantering between counsel exhibited by the record before us should not be tolerated by a trial judge. It reflects no credit on the participants or respect for the courts of which they are officers.

The instructions are no model for clarity or correctness and counsel's objections thereto should be remedied on retrial. We particularly see no purpose in using the words "of the laws of God and society" in Instruction No. 15 which appears to have been improvised from Instruction No. 520.07 of the South Dakota Pattern Jury Instructions.

Reversed.

ROBERTS and RENTTO, JJ., concur.

HANSON, J., dissents.

BIEGELMEIER, J., dissents in part.

BIEGELMEIER, Judge (dissenting in part and concurring in result).

I.

I cannot concur in the part of the opinion which holds the information is insufficient to charge manslaughter in the first degree. The majority opinion cites State v. Belt, 1961, 79 S.D. 324, 111 N.W.2d 588, and while it may not be the intention to overrule it as that opinion dealt with a murder charge (SDC 13.2007) and this offense is first degree manslaughter (SDC 13.2013), it appears to me that the same principle is involved. In Belt the charge of murder stated that on a date certain defendant did "unlawfully, feloniously, wilfully and with malice aforethought, murder a human being, Earl Perreault, and did thereby commit the crime of murder." We upheld this information though

---

1. Counsel for defendant on appeal did not represent him in the trial court.

murder may be perpetrated by four different methods or manners. First degree manslaughter may likewise be committed by four different methods or manners, for while there are only three subdivisions, (2) includes two different methods.

In State v. Hubbard, 1905, 20 S.D. 148, 104 N.W. 1120, the defendant was charged with murder and the trial court instructed on the law of that offense and of manslaughter in the first degree, but refused an instruction for second degree manslaughter. The court held that it was error not to instruct on second degree manslaughter. Therefore, in a charge of murder the information need not, under Belt, state anything more than is set out above and need not state any of the methods or manners set forth in its four subdivisions yet, under Hubbard, the jury must be instructed on manslaughter in both first and second degrees and the jury may convict for any of those included offenses. We have the anomalous situation that a charge of first degree manslaughter must specify one or more of the precise methods of the manslaughter charge and yet a defendant could be convicted of manslaughter in the first degree under a murder charge which did not mention any of the methods of murder or manslaughter in the first degree. Our court held in State v. Edmunds, 1905, 20 S.D. 135, 104 N.W. 1115, an information was sufficient to charge the accused with killing another human being "by means of a dangerous weapon", which are the precise words used in SDC 13.2013(2), when that phrase was omitted from the information.

The remedy of defendant who felt he was entitled to further information in order to prepare his defense would be to ask the court for a bill of particulars or where evidence was offered which he could show was a surprise to him, to make application to the court to postpone the trial to enable him to meet such testimony. State v. Otto, 1917, 38 S.D. 353, 161 N.W. 340. That appeared unnecessary here as defendant was represented by vigorous counsel throughout these proceedings and the transcript of evidence taken at the preliminary hearing, at which both the state and defendant introduced evidence, shows the manner in which the state claimed deceased received the injuries from which death ensued (see State v. Norwick, 1961, 79 S.D. 127, 109

N.W.2d 14, and State v. Belt, supra), so clearly that defendant's evidence at the trial included self defense. Defendant was not thereby prejudiced in any respect so as to render the information invalid. SDC 1960 Supp. 34.2902; State v. Ballard, 72 S.D. 293, 33 N.W.2d 339. Giving due respect to those opinions from 1905 to 1961, I do not believe we should make either inroads on, exceptions to or in effect overrule them.

## II.

While the question of sufficiency of the evidence to sustain the first degree manslaughter verdict is a close one and I do not agree with all that appears in the cited Kansas Supreme Court opinions, the evidence here lacks the standard set by the New York Court, and therefore I concur in that part of the opinion which holds it insufficient to sustain the verdict of guilty of first degree manslaughter and the consequent reversal of the judgment.

I am authorized to say HANSON, J., concurs in Part I. of this dissent.