STATE of South Dakota, Plaintiff
and Respondent,

v.

Purcell PROVOST, Defendant
and Appellant.

No. 12270.

Supreme Court of South Dakota.

Argued Feb. 13, 1978.

Decided May 3, 1978.

Leann Larson Finke, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on brief.

Richard A. Johnson of Willy, Pruitt, Matthews & Jorgensen, Sioux Falls, for defendant and appellant.

MORGAN, Justice.

The defendant appeals from his conviction of grand larceny and from his adjudication as an habitual offender. Defendant contends that he lacked the specific intent to commit larceny due to voluntary intoxication, and that the information filed against him was defective since it lacked an essential element of the crime. Regarding his habitual offender adjudication, it is asserted that various fingerprint exhibits should not have been admitted into evidence due to a lack of foundation, and that Exhibit No. 2B, a conviction record on an

escape charge, should not have been admitted, since it did not describe a felony which is required under SDCL 22–7–1. He further claims there was an unreasonable and prejudicial delay from the time of his arrest until his arraignment. We affirm the convictions and sentence.

On November 24 the defendant, after deciding not to accompany his wife to her parents' home for Thanksgiving, hitchhiked to Yankton where he met a friend. The two of them consumed approximately two quarts of alcohol, at which time defendant began to engage upon a drunken escapade. At approximately 3:30 p. m. on the same day a lady came into the Medical Clinic Pharmacy and told the pharmacist, Mr. Robert Jones, that a man who appeared to be intoxicated had lurched in front of her car. Half an hour later, the pharmacist observed the same man, later identified as the defendant, laying down in the grass next to the entrance of the Medical Clinic. A few minutes later when going out to the parking lot the pharmacist noticed that his 1966 Volkswagen stationwagon was gone.

When Mr. Jones phoned the police to report that his car had been stolen, he was informed that a subject driving a white Volkswagen had just been reported driving around in a ditch near Midwest Honda on Highway 52, west of Yankton.

Mr. Jones, Deputy Sheriff Hunhoff, and Jerry Kohoutek, the owner-manager of Midwest Honda, all identified the defendant as the person who was observed driving the white Volkswagen around in the ditch. Deputy Sheriff Hunhoff testified that at the time the defendant was arrested he was slumped, uncooperative, and abusive. The manager of the Honda shop concluded that the defendant was incoherent and not "in any shape to drive."

After being arrested on November 24, 1976, the defendant was not arraigned until December 2, 1976, supposedly because of the intervening Thanksgiving holiday. On December 8, 1976, the defendant sought a writ of habeas corpus from Judge Erickson on the grounds that he had not been brought immediately before a magistrate and informed of the charges against him, as required by statute.[1] The writ was denied, but Judge Erickson indicated that the application might be entertained at a later date if the defendant could establish that the delay had prejudiced him. The defendant did not renew the application until after the state had put on its case in chief at trial. The trial court denied the requested relief on the grounds that the defendant had not made a timely renewal of the application, and on the further ground that the defendant had failed to establish any prejudice caused by the delay in the arraignment.

The trial court instructed the jury as to intoxication of a defendant where a specific intent crime is committed. The defendant interposed no objection to the court's instructions. The jury returned a verdict of guilty of grand larceny.

Immediately following the return of the jury's verdict, a nonjury trial was had on Part II of the Information charging the defendant as an habitual offender. The state moved to amend the Information to read, "Chuck Hill, DCI Fingerprint Specialist" rather than "Jan Ridge," and to add the name of Officer Berneal Stratton of the Yankton Police Department. The defendant claimed surprise and prejudice, although defense counsel admitted that he had been informed by phone of the change in fingerprint specialists by both the Yankton County State's Attorney and Mr. Charles Dorothy, then Assistant Attorney General, the week before the trial. The state introduced fingerprint records and certified copies of judgments of conviction for prior felonies. After all the evidence had been received, the trial court found the defendant guilty of the crime of being an habitual criminal.

We first deal with the claimed error regarding the allegation of, and the proof of,

1. SDCL 23–22–20 provides:
 The defendant must, in all cases, be taken before the magistrate without unnecessary delay.

intent on the grand larceny charge. The Information stated that on November 24, 1976:

[D]id wilfully, unlawfully and feloniously by fraud or stealth take, steal and carry away certain personal property of the value in excess of $50.00 in good and lawful money of the United States of America, to-wit: a Volkswagon automobile bearing S.D. license number YA 5695, and which said property was then and there owned by Bob Jones in which (sic) said taking, stealing, and carrying away by said Defendant was without the consent and without the knowledge of the said owner thereof, and the said Defendant did then and there, and by said means, commit the crime of grand larceny.

Larceny is defined in SDCL 22–37–1 as the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof. It is undisputed that the property taken had a value greater than fifty dollars, and any larceny thereof would be classified as grand larceny under SDCL 22–37–2.

Defendant contends that the above information is defective in that it fails to state an essential element of the crime of grand larceny, that being the specific intent to deprive the owner of the use or ownership of his personal property.

▮ Pertaining to criminal pleadings, technicalities have been abolished and it is only necessary to plead the offense in its usually designated name in plain, ordinary language. The general rule concerning the sufficiency of an information is that it must enable a person of common understanding to know what is intended from the language contained therein, and it must also apprise the defendant with reasonable certainty of the accusation against him, so that he may prepare his defense and plead the judgment as a bar to a subsequent prosecution for the same offense. *State v. Belt,* 79 S.D. 324, 111 N.W.2d 588 (1961); *State v.*

*Sinnott,* 72 S.D. 100, 30 N.W.2d 455 (1947); *State v. Lange,* 82 S.D. 666, 152 N.W.2d 635 (1967); *In Re Application of Kiser,* 83 S.D. 272, 158 N.W.2d 596 (1968). Therefore, the question presented to this court is whether the information before us meets these requirements as set forth in *State v. Lange, supra.*

An information is sufficient if it employs the language of the statute *or its equivalent, State v. Bayliss,* 59 S.D. 585, 241 N.W. 608, *State v. Thomas,* 78 S.D. 568, 105 N.W.2d 549, *State v. Judge,* 81 S.D. 128, 131 N.W.2d 573, *but it must at least in substance contain the necessary elements of the offense. State v. Paul,* 41 S.D. 40, 168 N.W. 739; *State v. Taylor,* 44 S.D. 332, 183 N.W. 998. (Emphasis added.) *State v. Lange, supra* at 636.

It is obvious that the exact language of the statute was not followed for there is no specific mention of the element "with intent to deprive another thereof."

In *State v. Halpin,* 16 S.D. 170, 91 N.W. 605 (1902) this court was faced with the same question. In *Halpin,* the language used in the information is almost identical to that language used in *Provost.*[2] Also, the definition of larceny was the same in 1902 as it was in 1976. (See CL 1887, § 6780.) The *Halpin* Court stated:

[I]t has been held unnecessary in this jurisdiction to use the exact language of the statute, and an indictment for grand larceny, charging that the defendant 'did fraudulently and feloniously steal, take, and carry away' was held sufficient, on the probable theory that the language thus employed is equivalent to the expression, 'with intent to deprive another thereof.' *Territory v. Anderson,* 6 Dak. 300, 50 N.W. 124. Though to some extent informal, we think the information fairly imports all the elements of the crime of grand larceny, and, in ordinary and concise language, contains a statement of the acts constituting the offense, so as to enable a person of common under-

---

2. That at said time and place the said John Halpin did then and there unlawfully and feloniously, and by stealth, steal, take, and carry

away, of the personal property of J. O. Olson, * * *.

standing to know what is intended. Comp.Laws, § 7241. *State v. Halpin, supra* at 171, 91 N.W. at 605.

Other jurisdictions support the holding in *Halpin* that the exact language "with intent to deprive another thereof" is not needed in an information and that feloniously steal is equivalent to that element. In *State v. Thibodeau,* Me., 353 A.2d 595 (1976) it was held:

> The intent to deprive the owner permanently of the property stolen inheres in the word 'steal' and in the expression 'steal, take and carry away,' and when such terms are used in a criminal accusation, it is not necessary to further charge therein the intent to deprive the owner permanently of his property. (Citations omitted.) See also *State v. Miles,* Mo., 412 S.W.2d 473 (1967).

Therefore, it would seem that since the information did state the words "feloniously take, steal, and carry away," this language under *Halpin* and *Thibodeau* is equivalent to the statutory language "with intent to deprive thereof." Consequently, the information is not fatally defective.

■ This brings us to the issue of whether there was sufficient evidence to support the jury's finding of specific intent. Even though Dr. Stephenson testified he did not feel that the defendant would have had the requisite specific intent because of his excessive intoxication, reading of the record indicates that the jury could have drawn an inference from the evidence that the defendant was capable of forming such an intent. This court must view the evidence in a light most favorable to the verdict. *State v. Henry,* 87 S.D. 454, 210 N.W.2d 169 (1973); *State v. Geelan,* 80 S.D. 135, 120 N.W.2d 533 (1963). The jury was properly instructed through instructions # 8 and # 9 on the specific intent required by the crime of grand larceny and also by instruction # 17 which indicated the possible effect intoxication would have on the specific intent element. We, therefore, cannot upset their findings.

■ We next deal with the defendant's claimed errors regarding the habitual criminal charge. Defendant maintains that the trial court erred by endorsing two witnesses' names on the Information immediately after the defendant was informed of his constitutional rights in the court trial of the habitual offender charge. Even though SDCL 23–20–4 requires that the state's attorney shall endorse the names of the witnesses known to him at the time of filing, this court has consistently held that the endorsement of additional names upon an Information at trial is largely within the discretion of the trial court. *State v. Hoover,* S.D., 236 N.W.2d 635 (1975); *State v. Burke,* 86 S.D. 737, 201 N.W.2d 234 (1972); *State v. Belt, supra* (1961); *State v. Fulwider,* 28 S.D. 622, 134 N.W. 807 (1912).

> The endorsement of the names of witnesses upon an information at the trial is largely within the discretion of the trial court, and in the absence of some showing of abuse or some bad faith on the part of the state's attorney in purposely withholding the name of such witness until such time, resulting in substantial prejudice to the accused, the order of the court permitting the endorsement of such names will not constitute grounds for reversal. *State v. Rober,* 86 S.D. 442, 445, 197 N.W.2d 707, 709 (1972).

Defendant's counsel had been notified a week prior to trial about one of the additional endorsements on the Information and did not ask for a continuance due to surprise regarding Officer Stratton's testimony. Since the record discloses no bad faith on the part of the state's attorney and no substantial prejudice to the defendant, the trial court did not abuse its discretion in allowing the additional witnesses to be endorsed on the information.

■ The defendant asserts that exhibits # 1A and # 1B, which are defendant's fingerprints taken as a result of his arrest on November 24, 1976, should not have been admitted, since they were the product of an illegal detention, which issue will be discussed later. However, we hold that this contention is ill-advised in that the finger-

prints are not the result of the detention, but of the arrest. If the arrest had been illegal there might be some merit to defendant's argument. However, the arrest was valid, and this argument is specious.

 The defendant also maintains that a proper foundation was not laid by the state to admit the fingerprint records of his other crimes. The trial court took judicial notice of SDCL 23–5–4,[3] which established the statutory duty on the part of law enforcement officers to fingerprint arrestees, and having established that the prints were taken by law enforcement officers and recorded on standard DCI forms, the fingerprints were properly received into evidence as public records, pursuant to SDCL 19–7–9. The defendant fails to point out where the foundation is lacking, and to cite any authority.

 The state admits that exhibit # 1B was a duplicate of exhibit # 1A and as such has questionable relevance. However, the state argues if it was error it was not prejudicial, since this was a court trial and not a jury trial. Defendant failed to indicate any prejudicial effects.

 Defendant contends that the taking of fingerprints is a violation of the Fifth Amendment of the South Dakota Constitution and the United States Constitution in that the defendant is giving evidence against himself. As we have noted, it is a statutory duty imposed on law enforcement officers to take the fingerprints of any person arrested for a felony, and it has ordinarily been held that the Fifth Amendment privilege against self-incrimination relates only to testimonial or communicative acts on the part of a person to whom the privilege applies. It does not apply to acts noncommunicative in nature. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Consequently, this argument is wholly without merit.

To be convicted as an habitual criminal in South Dakota the accused must have been already convicted of at least one felony, SDCL 22–7–1. This can result in imprisonment for a term not more than twice the longest term prescribed upon a first conviction. Three previous convictions may result in the sentence to imprisonment for life. The state alleged that defendant was convicted of escaping from county jail under SDCL 24–12–2, and for third-degree burglary under SDCL 22–32–8. Defendant contends, however, that these felonies were not properly tied to him and, therefore, the habitual criminal act is not applicable.

 In showing that the defendant had committed the previous offense of third-degree burglary, the state introduced a certified copy of the judgment of conviction, along with fingerprint evidence showing that the defendant had been in the state penitentiary. The defendant objected to the admission of the fingerprint evidence as irrelevant as to whether the defendant had been convicted of a felony. However, the defendant did not object to the admissibility of the certified copy of the judgment of conviction and even admitted in his brief that this was the proper method of showing prior convictions. Therefore, we find that the admission of the judgment of conviction

---

**3.** SDCL 23–5–4 provides:

It is made the duty of the sheriffs of the several counties of the state, the chiefs of police, marshals of the cities and towns, or any other law enforcement officers and peace officers of the state, immediately upon the arrest of any person for a felony or misdemeanor, exclusive of those exceptions set forth in § 2ɔ 5–1, to take his fingerprints according to the fingerprint system of identification established by the division of criminal investigation, on forms to be furnished such sheriffs, chiefs of police, marshals or other law enforcement or peace officers and to forward the same together with other descriptions as may be required with a history of the offense alleged to have been committed, to this division for classification and filing. A copy of the fingerprints of the person so arrested, shall be transmitted forthwith by the arresting officer to the federal bureau of investigation in Washington, D.C.

Any officer required under the provisions of this section to take and report fingerprint records, who shall fail to take and report such records as is required by this section, shall be guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not more than one hundred dollars or imprisonment not exceeding thirty days, or by both.

sufficiently established a prior felony conviction under the habitual offender statute.

Regarding the other alleged prior felony—escape from county jail—defendant contends that this crime was a misdemeanor and not a felony. SDCL 24–12–2 states:

Every prisoner confined in any prison other than the state penitentiary, or in the custody of any officer or person as a prisoner at any place, who escapes therefrom is punishable by imprisonment in the state penitentiary not exceeding two years *or* in a county jail not exceeding one year. If such prisoner is under sentence of imprisonment at the time of such escape, his sentence on conviction of such escape shall commence at the expiration of the original term of his imprisonment. (Emphasis added.)

It is undisputed that the sentence he received on the charge was less than one year in the county jail. Whether an offense is to be considered as a felony or a misdemeanor, where it is not specifically designated in the statute, and where the punishment can be in the penitentiary or by fine or jail sentence, the authorities are split. One rule being that the offense is to be considered a felony or a misdemeanor depending on the sentence imposed,[4] and the other that the grade of the offense is determined by the maximum punishment authorized by statute.[5] We are not required however to decide this issue, inasmuch as the burglary conviction was sufficient to invoke the habitual criminal statute. Under the grand larceny charge, the defendant could have been sentenced to a maximum of ten years. The sentence of the court was only seven years, whereas it could have been as much as twenty. We hold, therefore, that the defendant has made no showing of prejudice arising from the introduction in evidence of the escape conviction, even had it not been admissible as a felony.

Defendant also contends that the habitual criminal act is enforced discriminately against Indian People. However, he fails to cite any case law nor does he point to any specific evidence of discrimination. We, therefore, find the claim to be without merit.

Finally, we turn to what appears to be the most vexing problem, the defendant's claim of unnecessary delay between his arrest and appearance before a magistrate.

After the defendant was arrested and placed in the Yankton County Jail, a formal complaint was not issued against the defendant until November 30, 1976, and defendant was not brought before a committing magistrate until December 2, 1976. Defendant contends that the eight-day delay constituted a violation of a mandatory duty found in SDCL 23–22–20; and, consequently, prejudiced the defendant's rights.

The trial court, when it originally denied defendant's writ of habeas corpus, indicated that the application might be entertained at a later date if the defendant could establish that the delay had prejudiced him. When the defendant renewed his motion again, at the end of the state's case, it was again denied for not being timely, nor having shown any prejudice.

SDCL 23–22–20 states: "[T]he defendant must, in all cases, be taken before the magistrate *without unnecessary delay*." (Emphasis added.) In *Application of Dutro*, 83 S.D. 168, 156 N.W.2d 771 (1968) this court was faced with a similar situation in a different context. In *Dutro*, due to the Labor Day Holiday, the defendant was not brought in front of a magistrate until five days after his arrest. This court held that this was an inexcusable delay and must be considered an illegal pretrial detention. It was further held, however, that a mere illegal detention is a nonconstitutional and nonjurisdictional defect, and that this defect was waived by *Dutro's* guilty plea.

Our statute is similar to Federal Rules of Criminal Procedure No. 5(a) which states:

---

4. *State v. O'Dell,* 71 Idaho 64, 225 P.2d 1020 (1950).

5. *Case v. State,* 177 Neb. 774, 131 N.W.2d 191 (1964).

An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without necessary delay before the nearest available federal magistrate * * *

Under federal cases illegal detention is likewise held not to be a violation of constitutional right, and prejudice must be shown before it can vitiate a conviction.[6] In *Morse v. U. S.,* 256 F.2d 280 (5th Cir. 1958) the court stated:

Delay in taking an accused before a commissioner, though illegal, does not invalidate a conviction in the absence of prejudice resulting from the detention. (Citations omitted.)

In *U.S. v. Ravich,* 421 F.2d 1196 (2d Cir. 1970) there was approximately a one and one-half months' delay between the time the defendant was brought to the district where the charge was pending and the time he appeared before the commissioner [now magistrate] who assigned counsel. However, even with this unreasonable length of delay, the court upheld the conviction in the absence of showing any prejudice. Therefore, if an analogy should be drawn between FRCP No. 5(a) and SDCL 23–22–20, as the defendant desires in his brief, prejudice is needed before the conviction can be overturned.

This rule is meant to prevent unnecessary delay during which time arresting officers may seek to elicit confessions or marshall evidence for presentation. *Gregory v. U.S.,* 364 F.2d 210 (10th Cir. 1966) *cert. denied* 385 U.S. 962, 87 S.Ct. 405, 17 L.Ed.2d 307; see also *Coyote v. U.S.,* 380 F.2d 305 (10th Cir. 1967) *cert. denied* 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484. The only evidence which was elicited from the defendant upon his arrest was the taking of his fingerprints. The defendant did not confess or give out any information whatsoever.

Defendant contends that prejudice was incurred and that the delay allowed the defendant's only witness to leave town, and also made it more difficult for Dr. Stephen-

son to evaluate the defendant's mental health. With respect to the latter assertion, we note from the record that Dr. Stephenson didn't examine the defendant until March 2, some three months later. We fail to see how this delay was caused by the illegal detention. The trial court further found that the absence of the defendant's drinking partner was not prejudicial since the evidence he could have offered would have only corroborated the known fact of the defendant's intoxication, which was already before the jury. Therefore, it could only be considered cumulative. Since the defendant failed to demonstrate any prejudice arising from the illegal detention we, therefore, hold that the trial court did not err in overruling his petition for habeas corpus and motion for judgment of acquittal at the close of the state's testimony, and affirm the convictions and sentence of the court.

All the Justices concur.

---

**6.** *Tate v. U.S.,* 109 U.S.App.D.C. 13, 283 F.2d 377 (1970).